Tilghman C. J.
This is an appeal from a decree of the Orphan’s Court of Dauphin county, confirming the sale of a tract of land supposed to be the property of George Hess, deceased, made by his administrator, by order of the said court. Matthias Blocher, the appellant, who married the widow of George Hess, contends, that the sale ought not to have been made, because the land was the property of Hessls widow. *461 It appears by the facts stated on the record, that the land in question, was part of the real estate of William Palm deceased, who died intestate, leaving a widow and three children; Catherine, the wife of Joseph Carmony, Mary, formerly the wife of the said George Hess, now of Matthias Blocher, and Elizabeth, the wife of George Moore. On a petition to the Orphan’s Court, for the partition of .the said Palm’s estate, it was divided into three parts, one of which was assigned to each of the husbands in right of their respective wives, the daughters of Palm. The parts assigned to each, were not exactly equal, and Hess’s being the least valuable, he was entitled to receive a sum of money to make his wife’s share equal.' It is now contended by the appellees, that George Hess had an absolute estate in fee simple in his wife’s land. Upon consideration of the act of assembly of the 19th April, 1794, under which the partition was made, I can perceive nothing which countenances such a pretension. The Orphan’s Court is authorised to have a partition made in the manner directed by the act, between the widow and children. But in case the land will not admit of a division into as many parts as will be sufficient to assign one portion to each, the court may either assign the whole to one child, or to several of the children, as circumstances require; and in such case the whole estate is to be appraised: those children who get no land, are to receive their shares in money; and the widow is to receive, during her life, the annual interest of one third of the value of the whole land in lieu of dower. There may be cases of hardship or difficulty under the complicated system of our intestate laws, where large sums of money are paid by husbands on account of their wives, who receive their portion in land, to their brothers and sisters, who take their part in money. It will be remembered, that the opinion now given, is confined to the case before the court, where each child had part of the land, and the wife of Hess, instead of paying, was entitled to receive money in order to equalise the partition. In such case, there is no more reason for the husband’s taking the fee simple, than if he had obtained judgment in a writ of partition in a court of common law. No such right is given him by the act of assembly, nor is there any equitable circumstance on which he can found it. I am therefore of opinion, that the Orphan’s Court had no right to order a sale of this land as the property of George Hess. He *462 had an interest, as long as he lived, in right of his wife, and if he had survived her, he would have been tenant by the courtesy. But on his death, all his right was extinguished, The decree must therefore be reversed.
Yeates J.
No legal proposition can be more self-evident than, that the lands of a married woman cannot be sold under any order of the Orphan’s Court, after the death of her husband, to pay off his debts. The inquiry therefore here is, in whom the title to these lands was vested, when the administrator applied by petition to the Orphan’s Court for an Order of sale.
The lands, on the death of William Palm, descended to his three daughters, Catherine, the wife of Joseph Carmony, Mary, the wife of George Hess, and Elizabeth, the wife of ■George Moore, as tenants in common, subject to the widow’s right of dower. Certain proceedings were had in the Orphan’s Court, under which it has been contended, that the purpart of Mary Hess in these lands has been converted into personalty, and the interest therein passed to her husband. Of these proceedings we have no copies, but certain facts have been agreed upon, in order to take the opinion of this Court. It would have been more satisfactory to me, to have examined a transcript of the record, by which it would appear, in what manner, and by whom, the proceedings originated, and the successive steps, which had been taken. Enough, however, is disclosed to us, to enable me to form my opinion.
The whole of the real estate of William Palm was appraised in three parcels; whether by an inquest, or by persons mutually agreed upon, is not stated: but it is not stated, nor even suggested, that any return had been made to the Orphan’s Court, finding that the said real estate could not be divided amongst the widow and children of the intestate, without prejudice to, or spoiling of, the whole. One parcel, marked (A) in a diagram returned, was appraised at 512/. 19s. Sd. which was taken by the aforesaid Carmony in right of his wife; one other parcel, marked (B), was appraised at ,470/. 9s. 4>d. and taken by the aforesaid Hess in right of his wife; and the remaining parcel, maked (C), was appraised at 637/. and taken by the aforesaid Moore in right of his wife. These three sums, added together, amount to 1620/. 8s. 9d. *463 of which one equal third part is 540l. 2s. 11 d. Consequently, the valuation of the lands accepted by Hess, fell short of the one third part of the total amount of the appraisement, the sum of 79/. 13i. 7d. It is idle, therefore, in the extreme, to suppose for a moment, that these proceedings were sanctioned by sect. 22 of the act of 19th April, 1794. An appraisement is to take place only, when the lands cannot be divided between the widow and children of the intestate, without prejudice to, or spoiling of, the whole ; and in such case, the persons to whom payment or satisfaction shall be made, are forever barred of all right in the lands ; and such was our opinion in Diermond's Lessee v. Robinson et al. cited from 3 Smith's Laxos, 165. The lands here were' susceptible of division, and were, in fact, divided; and recompense was to be made to the owners of the parcels of inferior value, in money, by way of oxoelty of partition, as was recommended by Lord Chancellor Parker, in Earl of Clarendon et al. v. Hornby, 1 Wms. 446. No scene could be more farcical than Hess appearing in the Orphan’s Court, with his two brothers-in-law, Carmony and Moore, as his sureties, to secure the-payment of their respective dividends. He could not possibly, in that state of things, have any thing to pay ; but was, in truth, entitled to receive of them their several proportions of the 79/. 13s. 7d. due to himself. It is stated to us, that Hess took the parcel (B), in right of his wife; and the title thereby, considering the proceedings as an amicable agreement, became as completely vested in his wife, as if her purpart had been assigned to her in partition, in a court of common law. It must be by some system of magic, if by the manoeuvre which has been practised, and the receipt of money-to effect an equality of partition, he could divest his wife of her interest in her father’s lands, by transmuting those lands into personalty, as has been contended.
In whatever light I view this case, I am satisfied, that the sale made by the administrator was unauthorised by law, and that therefore the decree of the Orphan’s Court should be reversed.
Brackenridge J. concurred.
Decree reversed.