The opinion of the Court was delivered by
Duncan. J.
When so great a change was made in the *173 course of descent, as was effected by the Act of 1705, and so novel a course of proceeding introduced by a tribunal unknown to the common law, it could scarcely be expected Trom human wisdom, to foresee and provide for all the consequences of this transition of real into personal estate. Each da> brings up new cases, unfolds new difficulties, discovers new defects; to remedy which, the Legislature are alone equal. For with all the laws, and supplements, made on this most important subject, the system continues miserably defective, more especially as it respects the rights of infants and Jemes covert. Hardships do occur; but Courtscannot usurp legislative functions, dr new model the law according to their own ideas of natural justice, dr redress hardships in each particular instance, or sanction the errors that have arisen in the exercise of new powers, conferred on a new tribunal. These forms of proceeding are not to be strictly scanned. Courts would overlook mere irregularities in the exercise of these powers; but the defects of authority and jurisdiction,' cannot be passed over. I would not, on these formal grounds, consider the proceedings as voidable, nor disturb decrees of confirmation, where the land is assigned to those whom the law designates ; but where there isrno authority to decree 'it to the person, such decree is void, and I do not know how any usag.e, if there be any such in a particular district, could be supported; for usage o.ught only to prevail when the construction is doubtful. That usage can never be a good one, which takes away the land of one, and gives it to another, without warrant of law. Usage' against a Statute, is an oppression of those concerned, and not an exposition of 'the lavr. Vaugh, 169, 383. 1 Dall. 178. This is not a mere matter of practice, but a question of right; and such usage cannot supersede positive law. A misconception by the Orphans’ Court of their powers, cannot be set up against the law itself; and this Court, whom the constitution of the jurisprudence of this country has invested with the powers of correcting the errors of the Orphans’ Court, cannot be referred to the practice 'of that very Court, to learn what the law is by which they are to proceed. An unbroken, general usage, where a construction is doubtful, and'much property depends on it, I would not disturb; but where the law'is quite clear and. will not admit of doubt, precedents, which *174 have passed sub silentio, ought - not to prevail. In Somer« mile's case,'decided by this Court, the first case ever brought into judgment, the Court refused to sustain this practice.
Catherine Hamilton and Jane, her sister, were tenants in common. The plaintiffs below claimed under Catherine, as her heirs; and were entitled to recover, unless she divested herself of her right, by some solemn voluntary -disposition of her own, or her right has been transferred to, or vested in, her husband, by some judicial proceeding, some judgment of a. Court of competent jurisdiction. The argument of the plaintiff in error is, that James Hamilton, by virtue of the decree of the Orphans’ Court, took the whole estate of the intestate: and.to,him and his heirs was it awarded. Whilé the defendants in error contend, that he took the whole in right of.his wife, and in trust for her. If the proceedings were a mere nullity, and the Orphans’ Court exceeded their authority in awarding the land to the husband, the defendants in error would take a child’s part in the mother’s moiety ; but if the husband took the whole in trust for his wife, then they would be 'entitled to their purpart of the whole estate. By the letter of the Act,, the Court cannot award the estate to any other than a child of the intestate, or his heirs or alienee: The husband is not named. He has his marital rights, his interest as tenant by the curtesey, while it remains land. When it is converted into personal estate, by a confirmation to another, and a recognisance for his wife’s share, he. takes,' as he would any other chose in action of his wife. We cannot give away the estate of the wife, on a mere conjecture of legislative intention. And’ I think it was as far from their intention, as it is from their expression, to give to the husband the right to take the lands of his wife, inherited from her father, and make it descend to the husband, just as if ,it had been. the. estate of his, oWn father. This is so contrary to the policy of the common law, so inconsistent with its whole economy, with regard to a wife’s inheritance, that it never can arise by any implication, or from a sense of natural justice, or from the presumption that the father, had he made a will, would have devised, not to his own child and her heirs, but to the husband and his heirs. This is contrary to the natural propensities of man, whose desire is to perpetuate his estate in his own generation. The Legislature never had *175 such latent intention. It is sufficient, however, to say, that they have not declared such intention. The husband’s interest in the wife’s land, is not the land itself. Even if he had issue by her, he has but a life estate, and that only, in strictness, where he reduces it into possession, during the coverture. The actual seisin of the husband during the coverture, is necessary to entitle him, as tenant by the curtesey, by the common law; though such actual seisin by the husband, ismot necessary by our law, if there be a potential seisin, or right of' seisin.. This has. been decided to be sufficient in this State. It is an. excrescence of the wife’s seisin. . He is seised in jure uxoris. If it be a -chattel of his wife’s, ít is his absolutely; if a chose in action and he reduces it'into possession, it is his: but if he does not, and she survives' him, it is hers. The mere, finding of the inquisition, that it is incapable of division, does not convert the land into money; for if the wife die between the inquisition and the final decree,' her interest would go as land; not to the next of kin, but to her heir. The recognisance would, be to him, and not to the husband. It would be a quasi tenancy by the curtesey interest, and not the personal estate of his wife. The husband would not have the right to elect, but the heir of the wife. This forces on the mind the conclusion, that the husband cannot take for himself: consequently that the Orphans’ Court have ho authority to decree it to him and his heirs. The Orphans’ Court have no power to decree it to him ; but as to the" interest of the other children,' where the husband takes in his own name, to him and his heirs, gives the requisite security," pays them their distributive shares, (for here payment after 30 years must be presumed) it is a very different inquiry. The heirs of the wife have the legal title to her own purpart untouched by the' decree, because as to her it is a nullity. Her interest remains as it did at her father’s death. But why should this null proceeding-vest in her the,.rights of others ? The legal right is either in the husband or the heirs of her sister. Why should she take the whole ? It was not bers by descent; it was not hers by purchase ; it was not awarded to her ; she did not pay for it. The very statement of the proposition, carries with it its own confutation. A man marries the daughte- of an intestate who has left nine other daughters. His estate is valued at *176 100.000 dollars. He takes it in his own name, to him and his heirs. He pays the other daughters their shares, 90,000 dollars. The wife .dies, never having had issue. ' Shall the nine sisters, after having just received from the husband 90.000 dollars, for, their interest in their father’s estate, rise up, on their sister’s death, and sweep away the whole estate, not only their sister’s part, but their own. Thiá is a most ex- ' travagant proposition.. But it is asked, what is to become of these shares ? I answer', the title, if not' in law, in equity, is in the husband. Having received the value, the heirs of fane would be estopped from gainsaying the right for which they had'been fully paid. No matter how irregular the proceedings in the Orphans’ Court are, no. matter whether voidable or not, as to themselves, they have rendered .them valid by ratification.' They are bound by the maxim of law, — • Qmnisratihabitioretrotrahitur et mandato equipar atar, by the acceptance of the- recognisance, acquiescence, and payment. Trustees are.- creatures of equity; Equity would act most inequitously to turn the husband into, a trustee, contrary to the truth of the facts. He cannot be converted into one, against truth and justice, by any legal intendment or fiction ; for in Jictione juris semper.subsistit e quitas. There is no actual trust; but the defendants in error.say, there is a resulting trust,- by act and operation of law. It is true, if a husband 'buys land and takes the deed in his wife’s name, it is pie-. sumed, prima facie, to be a gift to the wife. That is not a trust'for the wife ; it is the estate, the legal title. But it is a non sequitun, that where.he buys land with his own money, and takes the conveyance in his own name, he is a trustee for his wife; or that let him take the conveyance in his own name or his wife’s name, still he would be a trust.ee for his wife. • The husband might, if it so pleased him, and such has been the practice in some counties, take ,in. his own name, for himself and his wife, and the heirs of, his wife; and;such decree of confirmátión would be valid, because it gives him an estate as tenant by the curtesey, and secures the right of the wife and her heirs. It is-in substance taking in the right of his wife. This would -have been the course of reasoning, independent of usage. The supposed usage I have already given my opinion on. The Court would not be justified in indulging and sanctioning a practice in the Or *177 phans’ Court contrary to law, the construction of which is plain and clear; nor ought they to put a doubtful construction on a Statute, where no doubt exists in their own minds, where no uncertainty results from generality of expression, and where nothing is left 'deficient in point of expression. But this is not res integra. It was settled in principle, in Blocher v. Carmony, administrator of Hess, 1 Serg. & Rawle, 460. There the proceeding was by petition to the Orphans’ Court. The husband paid nothing for equality of partition ¿ and it was held, that there was no more reason for his taking his wife’s estate in fee simple, than if he had obtained judgment in partition at common law; But the very question in specie was determined, at Chambersbyrg, by this Court, in, October, 1820, between David Fogelsonger and David Somerville others. I was not present either at the argument or decision. The Judges who decided the cause continue of the same opinion, in which I entirely coincide. The inconveniences of this decision cannot be so very great. If they were as great as the utmost exaggeration could make them, whatever influence they might have in the construction of a doubtful Statute, they can have none where there is no room for doubt. And what if they were to weigh here? The Court, in the construction of every Act of Assembly, would be called on to weigh in a balance, the inconvenience and convenience of every legislative provision, and decide on. their own notions of mete expediency. This would be an exercise of a most tremendous power; would be enacting laws, and not expounding them. But the inconveniences are by no means so manifest. The wife, with all the forms required by law in the disposition of her lands, is perhaps too much- within the power of the husband. The husband and the wife, being of full age, and she privately examined, may convey to a third person, previous to the confirmation. That person may take as the alienee, and re-convey to the husband ; or this may be done after confirmation to the wife, and thus all inconveniences be removed. This is better than removing the only barrier, weak indeed it is, .against a tyrannical exercise of the power of a husband, to make himself master of his wife’s estate. Instead of weakening it, I would, if possible, add to its strength. But the interest in the purpart of her sister’s children, Mrs. HamiU *178 ton did not acquire. The Court made no discrimination faetween estate which she inherited from her father; and the estate of her sister’s children. And, from the generality of . . . , _ ■ , “ „ expression in the charge, of the Court, the jury naturally would conclude, that they were Instructed to find generally for the plaintiffs ; and so they have concluded, and found a general verdict for the plaintiffs.
The judgment must therefore be reversed, and a venire facias de novo awarded.
Judgment reversed, and a venire facias de novo awarded.