[ PHILADELPHIA, JANUARY 25TH, 1840. ]

## SEIDER and Others *against* SEIDER.

IN ERROR.

One died intestate in 1831, seized of real estate, leaving a widow, and brothers and sisters, but no children. Upon the petition of the brothers and sisters, the Orphans' Court awarded an inquest " to ascertain whether the real estate can with propriety be divided among the widow and legal representatives of the deceased, in such manner as to give the widow the one-half, including the mansion-house." The inquest returned, that the real estate could not be divided among the widow and legal representatives of the deceased " in such manner as to give the widow the one-half, including the mansion-house;" but made no appraisement; and no steps were taken to obtain an appraisement afterwards. The widow remained in possession after the death of her husband, and received the rents and profits : *Held*, that the brothers and sisters of the intestate could not maintain ejectment against her to recover the land under these circumstances.

THIS was a writ of error to the Court of Common Pleas of Lehigh County, to remove the record of an action of ejectment brought in that Court by Abraham Seider and others against Anne Seider, to recover a messuage and 22 acres of land in Upper Saucon township, in the said county.

The plaintiffs were the brothers and sisters of the defendant who was the widow of one John Seider, who died intestate and without issue, in the year 1831, seized of the premises. The defendant had occupied the land from the time of her husband's decease.

On the 4th of May, 1832, Samuel Seider one of the brothers of the deceased, presented a petition to the Orphans' Court of Lehigh County, setting forth the death of the said John Seider, intestate; that he left neither father, mother nor issue, but a widow; that he died seized of the premises, a draft whereof was annexed to the petition, and a lot of woodland of three acres more or less; and praying the judgment of the Court had on the said draft or plot or by inquisition for that purpose to be awarded, or otherwise as the Court might think proper to obtain the same, whether the estate

(Seider *v.* Seider.)

could or could not with propriety be divided, and whether the widow should have one moiety or half part thereof, including the mansion-house, during her natural life, or whether she should have and receive the rents and profits of one moiety thereof during her natural life, according to the directions of the fourth section of the act of 19th of April, A. D. 1794. Whereupon " the Court award an inquest to ascertain whether the said real estate can with propriety be divided to and among the widow and legal representatives of the deceased, in such manner as to give the widow the one-half, including the mansion-house."

On the 6th of August, 1832, an inquisition was held by the sheriff on the premises. The inquest returned, " That the real estate cannot with propriety be divided to and among the widow and legal representatives of the decedent, in such manner as to give the widow one-half, including the mansion-house."

The finding of the inquest was confirmed by the Orphans' Court, on the 6th of September, 1833.

This action was brought by the brothers and sisters of the deceased against the widow.

The cause came on for trial before BANKS, President, on the 3d of May, 1838, when the plaintiffs gave in evidence the foregoing proceedings in the Orphans' Court.

Some parol evidence was also given which is sufficiently stated in the charge of the Court: which was in substance as follows:

" John Seider died (seized of the lands, for the recovery of which this ejectment is brought,) without issue, but leaving a widow, who is the defendant in this case, and brothers and sisters, who are the plaintiffs. The questions to be decided arise under our intestate laws, in some measure, and to those laws we must look, and by them their rights to the possession of the land must be controlled and determined. The 4th section of the act of 1794, provides, " that if the intestate shall leave a widow, and no lawful issue, the said widow shall have one moiety or half part of the real estate, including the mansion-house, during her natural life, except in cases where, in the judgment of the Orphans' Court, the estate cannot with propriety be divided ; and in that case, she shall have and receive the rents and profits of one moiety of the real estate during her natural life." 'On the 4th of May, 1832, a petition was presented to the Orphans' Court of this county, by Samuel Seider, one of the brothers of the intestate, praying for partition, &c. The Court awarded an inquest to ascertain, determine and report, whether the lands of the said intestate could with propriety be divided, so that the widow shall have one moiety or half part of said real estate, including the

mansion-house, or not. The inquest made report, that the said lands could not be divided with propriety, so as to give the widow one moiety or half-part thereof, including the mansion-house. This report was duly confirmed by the Court. By the 4th section above referred to, the manner in which the rents and profits, to which the widow may be entitled, in case the lands cannot be divided, are to be ascertained and secured to her, is not pointed out. This provision is to be found in the twenty-second section of the same act. By this section the widow or any child, or children of the intestate may present a petition for division and valuation. This provision appears to be restricted to cases where the intestate leaves a widow and children; for the right to petition is given to the widow or relict, or any child or children of the intestate. By this section, where the land cannot be divided, it is to be appraised, and where it is divided the purparts are to be appraised; and in case it is ordered to one, or more than one of the children, the one-third of the appraised value of each purpart, if it is divided, or of the whole tract if not divided, is to remain charged upon each purpart or tract, until the death of the widow, the interest thereof to be paid her annually during her life. This section does not meet the case of a widow and no children, until it reaches the point of distribution, where it is provided, that if no issue is left by the intestate, then the lands may be assigned by the Court to the next of kin of the intestate. Any omission which may have existed in the act of 1794 in regard to the partition and valuation of an intestate's lands, who left a widow, and no issue, but brothers and sisters, is fully supplied by the act of the 4th April, 1797.

By the 8th section of this act it is provided, "that the like proceedings may be had when the intestate leaves no children, or their legal representatives, both in making partition, or, where the estate cannot be divided without prejudice to or spoiling the whole, by directing an appraisement, and ordering the whole to the eldest brother, or his issue, if any of such issue shall then be of full age, if he or she shall accept it, or to any other of the brothers, or their issue successively, if any of such issue shall then be of full age, upon the refusal by the eldest brother or his issue; or if there be no brothers or their issue, or they all neglect or refuse, then to the eldest sister or her issue, if any of such issue shall then be of full age, and on her neglect or refusal, to any other sister or her issue, successively, if any of such issue be of full age; in the manner and on the conditions directed by the act to which this is supplementary, with respect to the children of an intestate. And the same mode of dividing, assigning and appraising estates, shall be observed in all cases where by this act, or the act to which this is supplementary, estates are to be vested in several persons, as tenants in common."

We, have in this section, whatever doubt there may be as to the

(Seider v. Seider.)

act of 1794, reaching a case of intestacy without issue, but leaving a widow and brothers and sisters, entirely removed. According to the existing laws, in 1832, the widow or any of the brothers and sisters of the intestate had a right to have partition and appraisement of the lands, of which the intestate died seized. What is the operaration of the inquest awarded, and report made, that the land could not be divided so as to give the widow the one-half thereof, including the mansion-house, upon the rights of the widow? Have the brothers and sisters a right to turn her out, before her interest is ascertained by appraisement, and secured as is directed by the laws cited? Before partition and appraisement, the brothers and sisters and the widow have each their rights as regards the possession of the land. No one had a right of possession exclusive of the other. In case the land would divide, the widow would have had a right to enjoy the possession of the half including the mansion-house; if it would not divide, then it should be appraised, and the one-half of the appraised value would be a lien on the land during the widow's life, the interest to be paid annually. No one of the brothers and sisters could turn the other out until appraisement and acceptance. Nor can the brothers turn the widow out of the possession of the land, when it has not been appraised, although it has been found that it will not divide. This appraisement is a necessary step to ascertain her share of her husband's estate. This interest is not separated from the land. Before this is ascertained and secured, she has a right to live on the land, with the heirs. The rent and profits are given her in lieu of occupancy and possession. The heir who wants to extinguish this right to occupy, must take this preparatory step; he being the actor, it becomes, as it were, a condition precedent on his part, and the widow is not to be turned out until she gets the consideration for her quitting the possession secured to her, so that she may know its amount, and be able to procure a residence, and those comforts which are intended by the law should be secured to her. If the land is bound for her interest after it is appraised, and accepted by one or more of the heirs, is it not equally bound before appraisement? Before appraisement her right consists in occupancy, and to enjoy the one-half of the rents and profits. After the proceedings are closed in the Orphans' Court, then her right is to the interest of one-half of the appraised value, to be paid annually to her. The plaintiffs cannot by ejectment turn her off the land, inasmuch as her interest has not been ascertained by inquest and appraisement, nor secured to her according to the provisions of the acts of assembly, which create and regulate it. Can the plaintiffs sustain this action to get into possession of the land, although they cannot turn the defendant out of possession?

A widow, in cases like this, has a right to remain in possession of the mansion-house until her interest has been ascertained and secured.

She is not, however, in this case, entitled to hold in exclusion of the brothers and sisters of her late husband. One tenant in common cannot bring an ejectment against another, his co-tenant, unless he is out of possession. The possession of one tenant in common, is the possession of his co-tenant, until he is turned out, and permission to him to occupy the lands and to receive and to enjoy his proportion of the rents and profits denied him. This principle applies to the case of the parties to this suit. Were the plaintiffs out of possession—had the defendant denied their right to occupy and receive their proportion of the rents and profits of these lands? To determine this, we must recur to the testimony, for it is by that that your determination is to be made on this point, which is a fact for you to decide. Peter Lynn is the first witness to this part of the case : he testified, that the widow lives on the land, and has done so since her husband's death, which was in February, 1831; and that no other has had possession, except her and her tenants. This proves that the defendant lives on the lands, and that the plaintiffs do not occupy it. But still, is it evidence sufficient to establish the fact that she had ousted them? Aaron Erdman testified, that he rented part of the house from her in June last, and had paid her part of the rent; that she always told him that she would hold to the land, as the law would decide. You will decide what this evidence establishes. If she meant that she was in possession of the land as of the right which the law gave her and no more, without denying the right of the plaintiffs or preventing the enjoyment of their right, it would be no ouster in point of law. You will draw your own conclusions from the testimony.

George Brinker testified, that he farmed the lands for the half, for three or four years, and gave the half to her.—No one has had possession of the lands since her husband's death but her. If two persons have title to lands, and one merely occupies and receives the profits of them, this is no ouster. The law presumes that this is done for the benefit of both, and this is deemed the possession of both. This unity of possession is a property peculiar and essential to tenancy in common. Have you any evidence that the defendant did any thing at any time, to prevent the plaintiffs from participating in the enjoyment of the land, or in the receipt of the rents and profits thereof? Unless you have evidence that satisfies you of this fact, there would be no ouster proven, without which the plaintiffs cannot sustain this action. Possession alone by the widow will not of itself amount to an ouster. The same is true as regards receiving the rents. This alone would not constitute an ouster, though continued from the death of her husband until this time. Possession, and receiving the rents alone by one tenant in common for twenty years, will not amount to an ouster, if not accompanied with some evidence, that it was to the exclusion of the other rights. If you believe that all the defendant said, was, that she was merely in as

(Seider *v.* Seider.)

of the right which the law gave her, admitting the rights of the plaintiffs, this would not amount to an ouster of their possession. Attempting on her part, as has been proved, to have the rents ascertained and fixed which she was to pay the plaintiffs, looks like an acknowledgment of their right; it tends to remove the idea that she held against their right. A jury may presume an ouster from circumstances; whether the evidence in this case will warrant you in drawing such inference is for you to decide, under the view which the Court has given you as to what in law amounts to an ouster. You will, then, take her occupancy and receipt of the rent on the one side, her agreement to leave it to men to say what the annual amount of the rents ought to be, and the declarations, on the other. The attempt to fix the rent was, in my opinion, a recognition of the right of the plaintiffs. You will, however, decide this fact for yourselves, without being bound by our opinion on it. If you believe that the defendant held the possession, and received the rents and profits exclusively, denying the right of the plaintiffs, it would be an ouster, and your verdict must be for the plaintiffs. If, on the other hand, you believe that she barely occupied the lands and received the profits without any attempt to prevent the plaintiffs' enjoyment thereof, or receipt of their proportion of the rents, or denying their right thereto, then your verdict will be for the defendant.

I have been requested to charge you on the following points: 1st. "That under the acts of assembly in force at the intestate's death, the widow, when the property cannot be divided, and there is no issue, is not tenant in common with the heirs." The Court charges as requested on this point. 2nd. "That the exclusive occupancy, and use of the property by the defendant from the year 1831 to the institution of this suit is such an ouster, as even if the parties are to be treated as tenants in common, will entitle the plaintiffs to recover, if they have the title to the moiety." The Court does not assent to this proposition. Occupancy and use of the property alone is not an ouster, unless it be in exclusion of the plaintiffs' rights—to be sure, occupancy and use of the property are circumstances to be considered by the jury with the other evidence. 3d. "That unless by the judgment of the Orphans' Court it is found that the property is susceptible of division, so as to give the widow one-half, including the mansion-house, she is not entitled to the actual occupation of the premises." The Court does not assent to this proposition. The widow is entitled to live in the mansion-house, and occupy the premises with the other heirs, until there is a proceeding to have the land appraised, when it will not divide, and her share is ascertained and secured, as the law provides: nor do I think that an ejectment has ever been sustained in Pennsylvania in such a case."

The plaintiffs' counsel excepted to the charge; and a verdict

(Seider *v.* Seider.)

having been given for the defendant, a writ of error was taken, and the following errors assigned.

" 1. That the Court erred in their entire construction of the acts of assembly, as to the valuation and appraisement of an intestate's lands in a case circumstanced like the present.

2. That the Court erred in their construction of the proceedings in the Orphans' Court, and as to the legal effect and consequences thereof.

3. That the Court erred in all they said in regard to the defendant's right to hold the premises ; the nature of her tenure ; and the subject of ouster, exclusive enjoyment, &c.

4. The Court erred in answering the second and third points propounded, and should have affirmed the same."

Mr. *Brooke,* for the plaintiffs in error.—The judge below was of opinion that the intestate laws, applicable to the present case, made it imperative on the Orphans' Court to value and appraise the land, and ascertain the widow's share therein.

It is contended, 1. That the acts of assembly do not require this. They contain no express direction on the subject; nor does any result by implication. Being in derogation of the common law, these acts are to be construed strictly. The act of the 19th of April, 1794, *Purdon,* (1830) 401, after providing for cases where a widow and children are left by an intestate, designates, in section four, the interest of the widow in the real and personal estate, where the intestate leaves no lawful issue : if the real estate cannot with propriety be divided, " she shall have and receive the rents and profits of one moiety during her natural life." The 22d section of this act, *Purdon,* (1830,) 407, prescribes " the manner in which *the partition* of the intestate's estate may be made," but is confined, in terms, to cases where there are children. The act seems to point out no course of proceeding ulterior to the ascertainment of the fact that the real estate is not susceptible of division: Having designated the right, it leaves the remedies to the *ordinary forms* of law. The act of 4th April, 1797, *Purdon,* (1830) 409, was passed to supply some deficiencies of the previous law, but its provisions fail to embrace the present case.

The 8th section extends the provisions, as to partition, to cases where there are no children, or their representatives, but the *widow is not mentioned ;* nor was this defect remedied, until the act of the 29th of March, 1832, which, however, is not here applicable. Again, if the Court did possess the authority to value and appraise the widow's share, then it was for her to have asked the valuation to be made, and having failed to do so, she cannot set up this omission to bar our recovery.

(Seider. v. Seider.)

2. Whether these acts did require the Orphans' Court to value and appraise the land, and ascertain the widow's share therein, or not, that Court was the judge. They had jurisdiction : they passed upon it, and, in accordance with the law, as we contend, awarded an inquest, with powers defined, " to ascertain whether the said real estate could with propriety be divided to and among the widow and legal representatives of the decedent, in such manner as to give the widow the one-half, including the mansion-house." The report of the inquest was confirmed by the Orphans' Court. No appeal was taken from their decree; and it is conclusive. The Orphans' Court having decided that the acts of assembly did not provide for the case, and the authority of the Court being exhausted, the only remedy of the plaintiffs, was the action of ejectment. It is a remedy well suited to the present case, and fully adequate to enforce and to protect the rights of both parties. *Laussat on Equity,* 116, 80, and notes. The acts of assembly provide an additional mode of ascertaining and assigning a widow's dower ; allowing her, in case there are no children, one-half, instead of one-third of the product of the land, when not divisible, and the enjoyment of one-half the land, including the mansion-house, when divisible. It is therefore necessary to inquire, what right the widow has to hold her husband's estate under her claim of dower. Magna Charta, 9 Hen. 3, c. 7, (*Rob. Dig.* 176,) to remedy certain feudal oppressions, provided, that the widow should " tarry in the chief house of her husband for forty days after his death, within which days her dower shall be assigned to her." After the forty days have elapsed, ejectment may be maintained against her by the heir, or any person deriving title from him. *Evans* v. *Webb,* (1 *Yeates,* 425.) *Jackson* v. *O'Donaghy,* (7 *Johnson,* 247.) A widow cannot enter for her dower until it is assigned her, and set out either by the heir, terre-tenant or sheriff, in certainty. *Co. Lit.* 32, b ; 34 b ; 37 a. *Harg.* note 1. 1 *Rol. Ab.* 681. *Dy.* 76 b ; 343 b. *Plowd.* 529. *Bro.* Dower, pl. 16 ; Scire facias, pl. 36. 2 *Bac. Ab.* 134. Until assignment the widow has no estate in the land, for the law casts the freehold on the heir, immediately on the death of the ancestor. *Cruise Dig.* vol. 1, p. 159-62. *Gilbert on Tenures,* 26. *Jackson* v. *Vanderheyden,* (17 *Johns.* 168.) She cannot support ejectment for her thirds as dower, at common law ; nor can she join with the heirs in bringing ejectment for the lands of the deceased. *Pringle* v. *Gaw,* (5 *Serg. & Rawle,* 536.) Her claim of dower rests in action only, and cannot be aliened so as to enable the grantee to bring an action in his own name. *Jackson* v. *Aspell,* (20 *Johns.* 411.) The widow and heirs are neither tenants in common, joint-tenants, nor coparceners. *Sheaff* v. *O'Neil,* (9 *Mass.* 13.) 7 *Johns.* 248. After assignment she becomes immediate tenant to the heir, " by a kind of sub-infeudation or under-tenancy." 2 *Black. Com.* 135, 136. It thus appears, that at common law the widow has no right to hold ; and the authority which the act of assembly gives her, to occupy

the mansion and half the land, is only when the estate can with propriety be divided. In this case, then, it is ascertained that she had not the right to hold.

This case bears no resemblance to a tenancy in common, as was incorrectly laid down by the Court below ; nor can the doctrine that the possession of the widow was the possession of the heirs, be maintained upon any principle of law. The charge of the Court upon the subject of ouster, does not state the law correctly as applicable to the testimony in the present case. The inference drawn from the fact of the widow proposing to leave it to men, which was not assented to on the other side, is erroneous ; for such a proposition made and not carried into effect, is not evidence for or against any one. Nor, if otherwise, would it be an acknowledgment of our title to remove the presumption of an ouster. The old doctrine of ouster for which *Morris's lessee* v. *Vanderen*, (1 *Dall.* 66,) was cited below, is not the law of the present day. The true rule is, that the defendant may be allowed to show that she was always willing to permit an enjoyment in common. The idea that the right to half the rents and profits, constituted a right to half the land, was an error into which the Court was betrayed by confounding this statutory provision, with cases of devises, where it has been held, that a devise of the rents and profits of the land, was equivalent to a devise of the land itself ; a doctrine founded on peculiar reasons, which are not applicable to the present case.

Mr. *Davis* for the defendant in error.

The present case depends entirely upon the construction of the twenty-second section of the act of 1794, in connection with the eighth section of the act of the 4th of April, 1797. The interest of the widow under the intestate laws, where there is no issue, bears no analogy to her dower at common law ; it is different in its character, and enforced by different remedies, and consequently the authorities cited are not applicable. It will be found, upon a careful examination of the acts of assembly, that they clearly embrace the present case, and the mode of proceeding therein directed must be pursued. They require the Orphans' Court, in a case like the present, to value and appraise the widow's share. The petition for the inquest was not agreeably to the acts of assembly, and the finding of the inquest was defective and void. The widow, in a case like the present, derives from the acts of assembly an interest in the real estate of a peculiar character ; and this interest vests immediately on the death of the husband. That of the heirs is subject to it. She has a right to the possession of the mansion-house given to her by the acts of assembly, of which she can be divested only in the manner pointed out by the act ; and until that mode is adopted she cannot be ejected. These acts confer new rights, and they likewise give new and exclusive remedies. It was not incumbent

(Seider v. Seider.)

on the widow to make any application to the Orphans' Court. It was the business of those who are seeking to evict her. She has never denied their rights, but she disputes the illegal manner in which they have attempted to enforce them, to the destruction of her's.

Mr. *Davis* cited 1 *Atkyns*, 506. 1 *Vezey*, 171. 2 *Atkyns*, 358. 1 *Br. Ch. Rep.* 310. *Carlisle* v. *Cannon*, (3 *Rawle*, 489.)

The opinion of the Court was delivered by

Huston, J.— The plaintiffs were the brothers and sisters, or brother's children, of John Seider, who died intestate, leaving no children, but a widow, who is the defendant. He died in February 1831, seised of the premises in dispute, viz. a house, and about twenty-two acres and eighty perches of land: it is admitted that the widow is in possession, and has been since her husband's death.

On the 4th of May, 1834, Samuel Seider, one of the brothers of the deceased, presented a petition to the Orphans' Court. This petition stated the death of John, leaving neither father, nor mother, nor issue, but brothers and sisters; describing the property now in suit, and a lot of three acres of woodland; and " prayed the judgment of the Court on the matter, by inquisition to be awarded, or otherwise, as the Court should think proper, to obtain the same, whether the estate could, or could not, with propriety be divided; and whether the widow should have a moiety or half part thereof, including the mansion-house, during her natural life; or whether she should hold and receive the rents, issues and profits of one moiety thereof during her life, according to the fourth section of the act of 19th of April, 1794:" whereupon the Court awarded " an inquest to ascertain whether the said real estate can with propriety be divided among the widow and legal representatives of the deceased, in such manner as to give the widow one-half, including the mansion-house." The inquisition was taken on the 6th of August, 1832, finding that it could not be so divided. On the 16th of September, 1833, the inquisition was confirmed. And after proving, what was not denied, viz. that the widow had been, and is, in possession, and had said she would hold the land as the law would decide, the plaintiffs rested. The defendant then called witnesses to prove, that five or six years ago, in the court-house, there was an agreement between the widow and several of the heirs, (some not being present;) and three men were either chosen by the Court or the parties, to fix the amount of the yearly rent. That the men met, some of them having been notified by Solomon, one of the heirs. That they did fix a certain rent, (a writing containing which was offered and rejected.) One of the referees said, all this fell through because notice was not given to all the heirs.

I think I may fairly conjecture, that it was in consequence of this agreement at Court, that the Court confirmed the informal and

defective proceeding on the petition ; and that but for this agree-
ment, which rendered any decision of the Court unnecessary, it never
would have been confirmed.    It is because this agreement was not
put on the record, or not reduced to writing and signed by all the
plaintiffs, that the parties are subjected to the trouble and costs of
this suit.    No doubt the judge who then presided, thought either that
the brothers then attending and making the agreement, had authority
from the others, or would procure their assent in writing.    The judge
before whom this cause was tried, evidently, and very properly,
felt some delicacy in doing what, in effect, was overruling what
had been done by his predecessor.

The plaintiffs' counsel stated certain propositions, and required the
opinion of the Court on them.   [Here the learned judge stated the
propositions and answers.]

It will presently be seen, that where a person dies leaving a widow
and no issue, her interest in his lands is in no respect like her dower
at common law, except that it is only for her life.    No writ of
dower lies for this her interest—if it does in any case for the interest
of the widow of an intestate in his lands—(it may lie, against a
purchaser of lands from her husband after marriage, where she has
not executed the deed ; because her children having no interest, no
petition for appraisement, or valuation, can be sustained, and unless
she could support an action of dower for such lands, she would have
a right and no remedy :) but where the husband dies seised and
intestate, the better opinion seems to be, that the proceeding must be
according to the acts of assembly : and this is such a case.

It would seem necessary to cite, at least parts of several acts
relating to this matter ; and the rather so, as some of them seemed
to have escaped the notice of the plaintiffs' counsel.

The act of the 19th of April, 1794, after providing for cases where
a widow and children are left by an intestate, proceeds in section
4, to say, " If the intestate leaves a widow and no lawful issue, the
said widow shall have one moiety or half part of the real estate,
including the mansion-house, during her natural life, except in cases
where, in the judgment of the Orphans' Court, the estate cannot
with propriety be divided : and in that case, *she shall have* and
receive the rents and profits of one moiety of the real estate."—
Evidently this means one moiety of the rents and profits, for how
can the rent of one moiety of an estate be ascertained, if it cannot
be divided into moieties.

The 22d section states, that " To prevent any doubts which may
hereafter arise concerning the manner in which partition of the
intestate's estate may be made, Be it enacted," and proceeds to
direct, that on a petition presented by the widow or any of the
children, if of age, or by their guardian, &c. and if partition is
made, the Orphans' Court to confirm, " provided, that where any
estate in lands, tenements or hereditaments cannot be divided among

(Seider *v.* Seider.)

the children, or widow and children, without prejudice to, or spoiling the whole, *the inquest shall make a just appraisement thereof* to the Orphans' Court;" and then proceeds to say, that it may be awarded to the eldest son, or if he refuses, to the others in succession, paying or securing the shares to the other children : " but where the widow is living, and the whole premises shall be adjudged and ordered to the eldest son, or any of the children, the wife of the person so deceased, shall not be entitled to the sum at which her purpart or share of the estate shall be valued, but the same, together with the interest thereof, shall be and remain charged upon the premises, and the interest thereof shall be annually and regularly paid by the eldest son, or such other child to whom the said lands shall be adjudged, his or her heirs or assigns holding such lands ; to be recovered by such mother by distress, or otherwise, as rents are recovered," &c. The same section goes on to provide for a case in which, although the estate cannot be divided among all the children, yet it may without prejudice to or spoiling the whole, be so divided as to accommodate more than one, in which case it is to be allotted ; the choice being first offered to the eldest son, and the others in succession, and if no son will take, or there are no sons, to the daughters in succession, the elder having the first choice : " or in case the intestate left no issue, the same may be assigned to as many of the next of kin to the intestate, as such estate will conveniently accommodate, without prejudice to, or spoiling the whole, (preference being given to the male heirs among such as are of kin in equal degree,) &c. &c. The said children, or next of kin, to whom the said estate shall be so assigned, or some friend for them, paying, or securing to be paid, to the other children of the intestate, their respective parts of the value thereof, in the same manner as hereinbefore directed, where one of the children takes the whole estate."

No doubt, that although the widow is not named in the last clause, he who drew the law thought she was included in the phrase " in the same manner as hereinbefore directed,"—but doubts were suggested, and to remove this one, and some others, the act of the 6th of April, 1797, was passed ; the 8th section of which follows : " Like proceedings may be had where the intestate leaves no children or their legal representatives, both in making partition, or where the estate cannot be divided without prejudice to or spoiling the whole, by directing an appraisement, and ordering the whole to the eldest brother or his issue, if any such shall be of full age, if he or she shall accept it, or to any other of the brothers or their issue successively, if any such shall be of full age, upon the refusal of the eldest brother or his issue; (and the same provision for females if all the brothers refuse, or there are no brothers,) *in the manner and on the condition directed by the act to which this is a supplement, with respect to the children of the intestate.* And the same mode of

dividing, *assigning and appraising estates shall be observed in all cases where by this act, or the act to which this is a supplement, estates are to be vested in several persons as tenants in common.*" It may be here observed, that those to whom the real estate of an intestate descends, are repeatedly called tenants in common, in both the original and supplementary acts. And here again one would suppose all cases were provided for; but as the widow was not expressly named, doubts were expressed—and it is strange that they were listened to—whether she was included in the words, " in like manner, and on the condition directed by the act to which this is a supplement." It would seem to have required some time to raise this difficulty, or to find any person to believe it was one. On the 7th of April, 1807, however, another act was passed, as follows: Section 6. " When partition is made of an intestate's real estate, and a part is allotted to each of his *children*, or representatives, in case there be a widow of the intestate living and entitled to a part of the said real estate, during her life, it shall be the duty of the inquest or referees making partition, to estimate the value of the said part, and to apportion the same among the respective shares of the children or representatives; and upon the confirmation thereof by the Orphans' Court, the same shall remain a charge upon the said shares; and the interest thereof shall be annually and regularly paid to such widow, and may be recovered by action of debt or distress, as rents are usually recovered in this commonwealth: and when the estate is divided into fewer parts than there are children or representatives, the same proceeding shall be had to estimate and apportion the value of the widow's purpart among the said parts, which shall remain a charge thereon; and the interest thereof shall be paid, and may be recovered as aforesaid: and upon the decease of any such widow, the whole value of the said purpart shall be distributed among all the children or representatives, in proportion to their respective shares, according to law."

It had sometimes happened, that when an estate was found by the inquest incapable of division, and was appraised, that no one of the children or representatives would take it at the appraisement. On the 2d of April, 1804, an act was passed prescribing proceedings on which the Orphans' Court might order it to be sold; and the Court on a sale, are directed to distribute the price according to law and justice; but as that act did not expressly provide for the case where the estate was divided into fewer parcels than there were heirs or representatives, this last act provided, in section seven, " Where the estate of an intestate is divided into fewer number of parts than there are children or representatives, and any or all of the said parts is or are refused to be taken by the children or representatives, the like proceedings shall be had to sell the parts so refused, as is directed in case of the appraisement of the whole, in and by an act of the 2d of April, 1804."

(Seider v. Seider.)

These laws being on the same subject, are to be construed as if all embraced in the same act; and will be found to provide for all cases which can occur in the disposition of the real estate of an intestate; at least they provide for the case before us, in a manner sufficiently plain to enable us to dispose of this case. In every instance in which land cannot be·apportioned equally, or according to their rights, among the children or representatives of the intestate, the first, and all succeeding acts, require an appraisement of the whole, if not capable of division without prejudice to and spoiling the whole; and of each part if it is susceptible of division into fewer parts than there are children, or if into as many parts as there are children. See 1 *Serg. & Rawle,* 460. And if in any of these cases an appraisement is not made, the inquisition is radically defective, and must be quashed or set aside, as contrary to express enactment; and for the further reason, that it arrests all further effect of the proceeding to divide the estate, and all further action by the Court. In every instance which I have known or heard of, such an inquisition has at once been set aside by the Court; and I have said, would no doubt have been set aside in this case, if an agreement had not been made, which rendered any further action of the Court unnecessary; which agreement being left incomplete, from ignorance or ill-judged parsimony in not consulting counsel, has occasioned this suit.

I am aware that in *Young* v. *Bickell,* (1 *Serg. & Rawle,* 460,) it has been supposed Judge TILGHMAN expressed a doubt as to the power of the Orphans' Court to make partition between the widow and representatives, where there are no children. In that case there was a widow, no children, but a father to whom the part not given to the widow went during his life; and to whom the widow's part also went, if she died before him: and the doubt was, whether the acts of assembly provided for such a case, where only tenants for life were parties to the partition; and he says the acts contain " expressions of large import respecting partitions, and I suppose there was a general intention of authorizing partition in all cases where the real estate descended to several persons. Yet I see difficulties in the present case where the whole estate goes in the first instance to tenants for life."

Judge YEATES was decidedly of opinion that the acts of assembly embraced every case and observed " that those in reversion had notice even before the Court objecting to the gross inequality of the partition." It was set aside by the unanimous opinion of the Court for this inequality. Now the doubt of Judge TILGHMAN was confined to the case where only tenants for life were before the Court, and whether a partition between them ought to bind those in reversion.

In the case before us, the question is, whether the brothers and sisters having presented a petition for division only, or whether

she shall be entitled to one-half of the rents and profits during her life—a form of petition not sanctioned by law or practice; and the Court having awarded an inquest to ascertain "whether it could with propriety be divided to and among the legal representatives of the deceased, in such manner as to give the widow one-half, including the mansion-house;" and the inquest having returned "that the real estate of the deceased cannot with propriety be divided so as to give the widow one-half, including the mansion-house;" and the Court having confirmed this, the question I say is, whether in such case, the brothers and sisters can by ejectment recover the whole or one-half of the estate? the widow never having resisted or denied their claim or right according to law. If they could so recover, what would be done next? Would they bring a writ of partition at common law? The acts expressly forbid this. They must then petition the Orphans' Court under and according to the acts of assembly; but they could have done this before bringing the ejectment: it was then useless; it was more, it was vexatious and oppressive, and against the express provision of the act of 1794, which says, "to prevent disputes concerning the manner in which the partition of the intestate's estate may be made;" and also the 8th section of the act of 1797, which says, "and also the same mode of dividing, assigning and appraising estates shall be observed in all cases, where by this act, or the act to which this is a supplement, estates are to be vested in several persons as tenants in common"; now this estate is vested, or to be vested, in the collateral heirs of the deceased as tenants in common; and the widow may not be a tenant in common with them, she has an interest by the law, subject to which it must in some manner vest in them. Whether this interest shall be a *life-estate* or one-half of the real estate, including the mansion-house, or shall be the interest of one-half of the price at which it shall be appraised or sold, must depend on the future procedings in the Orphans' Court. Her right to the possession of the mansion-house is given by act of assembly: it has no connection with or dependence on the right of a widow at common law. It may cease by an inquest finding the property cannot be divided without prejudice to or spoiling the whole, and an appraisement, and the land being taken at the appraisement by one of the heirs, and on adjudication charging her interest on the land; or by a sale and appropriation of the interest of half the price to her use during life; and not until, in some of these ways, her rights are ascertained and secured.

This view of the case, which is substantially as it was considered in the Court below, puts an end to the plaintiffs' ejectment, and supercedes the necessity of a particular notice of the points propounded to the Court, and the answers thereto.

Judgment affirmed.