*Seventh Judicial District.*

## In the Court of Common Pleas of Montgomery County.

---

## ANNA FISHER *v.* AARON K. KREEBEL AND ABRAHAM K. KREEBEL, *Executors of* GEO. KREEBEL, *Dec'd.*

1. Where there is a bequest of a residuary interest, which has not yet been precisely ascertained, the executors not having filed a final settlement of their accounts, and no proceedings having been had in the orphans' court to ascertain the amount of the testator's property, and there has been no order from that court for its distribution among the residuary legatees, the common pleas have no jurisdiction.

2. Neither has that court jurisdiction to inquire and determine whether a legacy is payable to the legatee until he or she has given security as required by the 49th section of the act of February 24, 1834.

3. Sketch of the jurisdiction and statutory growth of the orphans' court.

This was an action brought by one of the legatees under the will of Geo. Kreebel, dec'd, against the executors of that will, to recover a distributive interest bequeathed to her by the will, subject to certain restrictions imposed in a codicil thereto. The question for the court is distinctly stated to be in the amicable action and case stated, "Whether the plaintiff under the will and codicil is entitled to receive from the executors her share of said estate," or whether the same is required to be held in trust for her use for her life, &c. If the court should be of opinion that said Anna is entitled to recover from the executors her share of the estate, then judgment to be entered for the plaintiff for the sum of $5,000; but if the court should be of opinion that the said plaintiff is not entitled to recover the share aforesaid, then judgment to be entered for the defendants.

It appears that the testator died on the 15th of September, 1869, leaving a will, and codicil thereto. By his will he bequeathed as follows : He empowered his executors to collect his outstanding moneys, convert his personalty into cash, sell and convey all his real estate, and out of this general fund to pay all his debts and bequests, and as to the residue he provided in *haec verba :* " Giving and bequeathing the same hereby to all my children, share and share alike." (Here the testator bequeaths one equal share to each of his six children, the words as to the plaintiff being) "to my daughter Ann, lately intermarried with Eph. Kreebel, one equal share. In the case of the death of any of his children he directed the share of such child or children to be paid "to their several and respective heirs, or legal representatives." By a codicil the testator directed as to Anna's share as follows : " Whereas, in my said will I have given and bequeathed unto my daughter Anna; now the wife of Jacob Fisher, one equal part or share with my other children, now I do hereby

declare that my will is, that after the death of my said daughter Anna, the said share to be paid unto her children, or their legal representatives, and she shall not entrust the same, or any part of it, unto any person's hands without first receiving sufficient security that this my will shall be fulfilled and fully complied with." It further appears that the amount of the residue has not yet been precisely ascertained, that the executors have not as yet filed a final settlement of their accounts; and that no proceedings have been had in the orphans' court to ascertain the amount of the testator's property; and no decree from that court for its distribution among those entitled to it.

Opinion by

ROSS, J. It is apparent that the common pleas has no jurisdiction to consider and determine the question in the case stated. It was submitted without argument, and it appears that the parties to it have agreed to submit the question to this court; but consent cannot confer jurisdiction, and courts are bound to keep within the circle of their powers, and not stultify themselves by judgments which will be mere *bruta fulmina*, and which might possibly complicate the wills of parties. Besides, there are minor children of the plaintiff, who are deeply interested in the adjudication of this question; who are not parties to this record, but who are entitled to notice, and who would become parties in the orphans' court, the proper forum, were this proceeding as it should be, in that court. A disclaimer of jurisdiction which proceeds from the court itself, and is invoked, not at the suggestion of the parties, but against their desire, requires that such disclaimer should be justified by a clear exhibition of authority establishing an exclusive jurisdiction over the subject matter of this action in the orphans' court. This I propose briefly to give.

Early in the history of the statutory law of this state, the importance of preserving the remedies provided by statute was seen and recognized, and legislation was provided to enforce this practice. The act of 5th of March, 1806, declared that a statutory remedy should be strictly pursued, and prohibited a resort to the provisions of the common law, unless such resort should be necessary to enforce the provisions of the statute. Ashford v. Ewing, 1 C. 213. To determine, then, whether a common law remedy exists or can be pursued, it is necessary to ascertain whether a statutory remedy has been provided. If it has, then unless the original common law remedy should be necessary to accomplish the purposes of the statute, it can no longer be resorted to. It is necessary, therefore, to examine the powers conferred by statute upon the orphans' court, and the remedies concurrently given to enforce those powers, to determine whether the adjudication sought in the case at bar is within the purview of the powers and processes conferred upon the orphans' court. If it be, then the common pleas is without jurisdiction, and the parties to this action have mistaken their forum. Our orphans' court system is peculiar to the

commonwealth, and though engrafted on a system of jurisprudence which is founded on the common law, is not indebted to it for its existence or development.    By the common law, and at its infancy, when one died in England, having made no disposition of goods which were then regarded as testable, the king, as *pater patriæ* on various legal pretences, seized all, and this half feudal half barbarous royal prerogative was vested by royal grant in a variety of persons.    Sometimes in the lord of the manor, sometimes in the great feudatories, who exercised the royal prerogative for their own individual profit.    This system, in process of time, gave way to an ecclesiastical claim, and a general right of administration vested in the ordinary, whose only limit of appropriation was the restraint of conscience upon rapacity.

By this system not only were the heirs of the dead defrauded, but the creditors were deprived of their means of payment.    By Stat. Westminster 213 Edw., 1 C. 19, the claims of creditors were secured, and their payment required ; but the rights of the heirs were still unprotected. A further stride towards natural justice and equity was made by the Stat. 31 Edw. 111, which required the ordinaries to appoint the next and most lawful friends of the dead intestate to administer to his goods. Thus it was that the ecclesiastical courts in England obtained exclusive jurisdiction over administrations.    Thus the law of England remained until the Stats. of 22d, 23d Car. 2, Ch. 10, which provided for a distribution of the personal assets amongst the next of kin, in conformity with certain rules.    The real estate of the decedent was not involved in this litigation—that being governed in its succession and descent by feudal principles modified by custom, proscription and statute.    The proprietary government of Pennsylvania, released from the oppression of feudal customs and immemorial usage—and starting as it were afresh in its jurisprudence, and enlightened by the progress of reform, acting upon the common law, early began to legislate upon this subject, regarding, however, the estate real, personal and mixed, of a decedent, as assets in the hands of his representatives.

The earliest legislation upon this subject will be found on a note to Smith's laws *54, creates an orphans' court ; the idea of which is stated by C. J. Woodward in a very learned review of this subject in Horner *v.* Hastrouck, 5 Wr. 169, to have been derived from the "court of orphans" in the city of London, Weimmer's Appeal, 1 Wh. 102.    In fact the name of the court as first styled by provincial legislation, was the "court of orphans."    As the orphans' court, its first constitutional recognition was in the constitution of 1776 ; and since that period in every new organic law ; and its powers, authorities and jurisdiction were multiplied and increased by a great mass of undigested legislation until

---

* Smith's Laws, 153.    The Act of May, 1688.    3, Smith's Laws.

1832, when, out of the existing statutes, a codification was commenced, which resulted in the acts of '32, '33, '34 and '36, forming a complete system for the administration, settlement and distribution of testate and intestate estates. This legislation, with some important modifications and alterations, and the addition of new, and as experience had demonstrated, necessary powers, was a compilation and harmonizing arrangement of crude, and in some respects, conflicting statutes.

These statutes are instructive, attesting as they do the immature and formative condition of a system feeble in itself, but which was destined to become one of, if not the most important of the departments of our jurisprudence. The first being the 110th law, was enacted March, 1683. The second being the 172d law, in May, 1684. The third being the 138th law, speaks of this court as the court of orphans, in May, 1688. The fourth on the 6th of June, 1693. On the 27th of November, 1700, two additional acts were passed, and in 1705 and 1764, attempted revision and codification was had in general statutes adopted for that purpose. Various other statutes were added from time to time until 1832, when the final codification was commenced. This hasty historical review establishes that the orphans' court is purely a creation of statute, but a creation which in the reach of its powers has exclusive jurisdiction. The act of 1832 continued to the orphans' court, under proper regulations, the power to decree a sale of a decedent's land for the payment of his debts; the act of 1834 empowered the court to make distribution of the assets and surplus of the estates of decedents after settlement of administration accounts among creditors and others interested. Horner v. Hastrouck, *supra*.

If, then, the power be vested in the orphans' court to distribute the estates of decedents in the hands of executors or administrators among those entitled, it is manifest that this court has no jurisdiction of this case; and an attempt to exercise it would be a violation of the provisions of the act of 1806. That such authority cannot be invested by the orphans' court, is no longer even questionable. In Keller's estate, 5 H. 422, it was expressly decided that the orphans' court is by statute clothed with authority to distribute the estates of decedents in the hands of executors and administrators, among the persons entitled to the same, and that by the general terms, as well as by express words, the legislature embraces creditors as well as heirs and next of kin and legatees. In Barkley's appeal, 10 Barr 387, the same doctrine was held, and C. J. Gibson derived the authority from the 4th sect. of the act of 1832. In Whitesides v. Whitesies, 8 Harris 474, it was declared that if there be anything besides death which is not to be doubted, it is that the orphans' court alone has the authority to ascertain the amount of a decedent's property, and order its distribution among those entitled to it. This was an action of assumpsit, brought by the legatee of a distributive interest before settlement filed or distribu-

tion ordered by the orphans' court, against the executor, to recover the amount of that interest; and the question of jurisdiction was raised and decided.  In Shollenberger's appeal, 9 Harris 341, it was distinctly decided that the orphans' court, within its appropriate orbit, is a court of exclusive jurisdiction.   In Ashford *v.* Ewing, *supra*, it was held, after a careful and exhausted review of all the authorities, that since the passage of the acts of '32, '33, '34 and '36, the orphans' court has exclusive jurisdiction to make and enforce distribution of the estates of decedents, and that no common law action can be sustained to recover a distributive share of such an estate against the administrator, even though this account exhibiting a specific balance against him has been settled in and confirmed by the orphans' court, the court adding this emphatic language: "It is time this question should be considered settled."   When the nature of the amicable action and the facts agreed upon are considered in the light of these authorities, all questions as to the jurisdiction of this court is determined negatively.    But there is yet another ground which would deprive the C. P. of jurisdiction in this case.   The question presented by the case stated, is not an accurate statement of the question really involved, which in effect is: Whether the plaintiff be entitled to demand payment of her legacy until she has given security as required by the 49th section of the act of February 24, 1834?   This is a question purely within the purview of the powers of the orphans' court.   It is a preliminary question to be determined by that court, before pronouncing a decree of distribution, and of which this court can take no cognizance.   The act referred to was passed to remove doubts which had existed, as to the power of the orphans' court to require security in such cases, Duval's appeal, 2 Wr. 112, and at once vested that power in the court, and provided a protection for those interested contingently and upon condition in the ultimate disposition of the fund.   But in every case where the statute has provided a remedy in the orphans' court, it has been held that the common law action has been taken away.   Bowman *v.* Heiss' ex'rs., 1 P. Rep. 282.   In Thomas *v.* Simpson, 3 Barr 60, it was held that a widow cannot maintain an action of dower when her husband died seized and in possession.   The jurisdiction of the orphans' court in such case being exclusive.   Neither can the heirs maintain ejectment against the widow, the remedy being exclusively in the orphans' court.   Seider *v.* Seider, 5 Wh. 208.   In Myers *v.* Black, 5 Harr. 193, it was held that a vendee cannot resort to the common law action of ejectment, to enforce specific execution of a parol contract for the sale of land by a decedent, his remedy is confined to that given by statute in the orphans' court.   It has also been held, that after the passage of the act of '34, which gave a remedy in the orphans' court for the collection of legacies charged on real estate, that the statutory remedy must be pursued.   Donner *v.* Donner, 9 W. 60 ; Craven *v.* Blakeney, 9 W. 19; Streckler *v.* Sheaffer, 5 Barr 240 ; Mohler's appeal, 8 Barr 26.

Assuming for the sake of the argument, that the common pleas has the distributory jurisdiction claimed by the plaintiff, and also assuming that this court was of opinion that the plaintiff was entitled to recover the principal sum of the legacy, upon her giving security, as required by the 49th section of the act of '34,—how could the judgment be entered? The common pleas has no power, that I am aware of, to enter a conditional judgment upon the case stated; and if the plaintiff be not entitled to the legacy, until security be given, we will be compelled to enter judgment against her, though in the orphans' court she could receive it upon that condition being complied with. It is abundantly demonstrated, however, by the review of the authorities here presented, that the plaintiff has mistaken her forum, and that she must submit the questions raised by this record to the orphans' court. This protracted review of the authorities seems to be necessary, in as much as the question of jurisdiction was raised by the court, *ex propio molie.* For the reason that the common pleas has no jurisdiction to hear and determine the question presented by the case stated, judgment therein is directed to be entered in favor of the defendants.