# Ragan's Estate.

In a proceeding in partition and valuation, it is essential that all the parties interested should have notice ; and although the sheriff's return that the parties in interest were present is *prima facie* evidence of notice to all, yet it is not conclusive.

Upon an objection to the proceedings for want of notice to one of the persons in interest, it is no answer to show that such person had been advanced to the full amount of his share.

In such proceeding it is necessary that all persons in interest should be named. Hence, the omission to name a mother who represented the interest of a deceased child is fatal to the proceeding.

The alienee of the eldest son is entitled to the first choice of the estate at the valuation.

APPEAL from the decree of the orphan's court of *Beaver* county confirming to William Taylor, at the valuation, the real estate of Zachariah Ragan deceased.

[Ragan's Estate.]

This proceeding was commenced upon the petition of Collins Ragan, who set out in his petition that his father died intestate in October 1827, leaving a widow named Mary, and issue eight children, to wit: " Collins, Alexander (who had received his share of the estate), Joab, since deceased, leaving one child named Zachariah, Elizabeth, married to John Sutton, James, Zachariah, Harriet, Nancy, and Polly, seised of a tract of land, &c." The writ of partition issued on the 18th of April 1835. The inquest found that the estate would so divide as to accommodate only two of the heirs, and they valued each division. The inquisition was thus concluded: " in witness whereof as well the said sheriff as the inquest aforesaid to this inquisition, *in the presence of the parties,* interchangeably set their hands and seals," &c. This inquisition was confirmed on the 4th of June 1835; and on the 7th of December 1836 the court granted a rule on the heirs to appear at the next term (March 1837) to accept or refuse the said estate at the valuation ; when William Taylor, who was the alienee of the eldest son and of some of the other heirs, appeared and took both parts at the valuation, and entered into recognizance according to the act of assembly, the court having decreed the same to him.

Mary Ragan, the mother of the children and the guardian of the two youngest ones, filed exceptions to the proceedings.

1. That notice was not served upon all the heirs of the time and place of holding the inquisition, nor of the rule upon the heirs to accept or refuse the estate at the valuation. Alexander had no notice.

2. Because William Taylor was permitted to take the estate at the valuation.

3. Because Lucinda Ragan, one of the heirs living at the decease of Zachariah Ragan, was not named in the petition for the writ of partition.

*Roberts* and *Shannon,* for plaintiff in error, cited, 4 *Binn.* 99, 226; 1 *Dall.* 376.

*Shaler,* for defendant in error.

The opinion of the Court was delivered by

Rogers, J.—It is the duty of the sheriff, in obedience to his writ, to give due notice of the making the partition to all the parties in interest. The performance of this duty by the sheriff in this case only appears from the inquisition itself, signed by the jurors and sheriff, in which it is attested that the partition was made in the presence of the parties. Although it does not expressly appear that all the parties were present, yet we attach but little weight to this omission, as we should presume that all things which the act requires from the officer had been performed. But, notwithstanding that the attestation of the jurors and the sheriff is *prima facie* evidence

of the fact of notice or that the parties were present, yet it is not conclusive evidence ; and it is competent to show, on the return of the inquisition, that this, which is absolutely essential to the validity of the partition, has been wholly neglected or wilfully omitted. Now, so far as Alexander, who was one of the sons, is concerned, it is admitted that he neither had notice nor was he present at the inquisition ; but it is said he was not entitled to notice, nor had he any right to participate in the proceedings, because he was advanced to the full value of his share in the estate in the lifetime of the father. I cannot perceive the force of this reason. It is, to be sure, stated in the petition, that Alexander received his full share of the estate ; but this allegation does not seem to have undergone any judicial investigation, either before the inquest was awarded or afterwards ; nor had he any notice of the process in any of its stages, nor was he present at the execution of the writ. But this we deem indispensable ; for otherwise the right of a party in interest might be forever concluded or greatly prejudiced, which is contrary to that natural justice which requires that every person who is interested should be summoned and heard. 3 *Mod.* 378. It is worse than idle to allege that Alexander had no interest, and was not, for that reason, entitled to a hearing, for he might have shown, had an opportunity been given him, that the allegation in this petition was untrue. The receipt on which they rely does not purport to be a discharge in full. It is an acknowledgement of the receipt of a sum of money to go, as it is expressed, towards his part of the estate, which may or may not be a full equivalent for his share. There is this uncertainty arising on the face of the written document ; and it is not the proper time to inquire, even if we had the means, whether the sum of 382 dollars amounts to the full value of his purpart. That question should have been investigated and decided by the orphan's court in a preliminary stage of the proceedings, before they awarded an inquest.

In the proceedings for the partition and valuation of an intestate's real estate it is necessary that the parties in interest be named in the petition, decree and notice, when known. Act of the 14th of April 1835. The intestate left nine children, one of whom, Lucinda, is since dead. This circumstance is no where noticed on the record, although on her death a life estate in her purpart, by the intestate laws, goes to the mother. The widow has not merely an interest in that capacity, but in respect of the freehold, which the law casts upon her. This material fact, it is very clear, by a fair construction of the act of 1835, should have been stated in the petition, or should have been noticed in the decree of the orphan's court ; for otherwise she may be deprived of a valuable right which she unquestionably has in the estate. As she is no party, as to that right the presumption is, she was neither summoned nor present at the partition ; at any rate there can be no presumption against her arising from the finding of the inquisition. That she was not represented as the heir of Lucinda is not denied ; and if the requisition of

[Ragan's Estate.]

the law had been observed she might have prevailed on the inquest to put a higher value on the property.  At any rate an opportunity should have been given her for that purpose, by a notice to her as the representative of her deceased daughter.  In Walton *v.* Willis, 1 *Dall.* 376, a partition in the orphan's court was set aside because no provision was made for a tenant by the curtesy, his name not being mentioned in the decree of the court.  That case is very like the present.  In Jenks *v.* Brown, 3 *Johns. Rep.*, it is held, that where one of several tenants in common had alienated his share, and the plaintiff's petition proceeded as if no such alienation had been made, by giving notice to the original co-tenants, without taking notice of the grantee, the judgment in partition was void.  There the parties acted under a mistake, but still it was decided that the omission to bring the party properly into court rendered the proceedings wholly inoperative.  The principle that governed the court in Jackson *v.* Brown rules this case, for the observance of the rule is just as requisite to protect the rights of the heirs as the grantee or alienee. The point in Jackson *v.* Brown was decided in an ejectment, but here the objection is taken on the return of the inquest, when the court can examine and correct any irregularities which may have occurred without detriment or prejudice to the right of any person. It is competent to the parties to institute other proceedings in which these errors may be corrected, and no injustice can result from a reversal of the partition.  All the parties, including the grantors and the widow, may be regularly notified ; and, if necessary, the fact of the advancement or the alienation of part of the property may be decided by the orphan's court, or by a jury on an issue to be directed by them.

What has already been said might render unnecessary a decision on the next question ; but as it has not been expressly ruled, we think it better to express an opinion on the point whether the alienee of one of the sons succeeds, by virtue of the alienation, to his right of election under the act of the 29th of March 1832.  In 4 *Binn.* 226 the chief justice, with his characteristic caution, avoids giving an opinion on the point, but leaves it an open question on the act of 1794.  In Hershe *v.* Brenneman, 6 *Serg. & Rawle* 3, it is held that the children of the oldest son of an intestate, who died in the lifetime of an intestate, succeeded as well to the priority of choice which the father would have had if he had survived the intestate as to his share of his estate.  This decision is made on the equity of the statute; and in the act of 1832 the right of choice is given to the sons successively, and their lineal descendants, an alteration in the words of the law suggested by the decision of the court in Hershe *v.* Brenneman.  In no respect is there any change made in the act of 1794.  No intention appears to alter the law as it was ruled under the previous act. On the contrary, the act of 1832 affirms it by incorporating in words the construction which had been given to it; and this it must be remarked is not the only instance of the kind in the revised code.

VII.—2 N

[Ragan's Estate.]

It remains then to inquire what has been the constructien of that act.  As to its practical construction there is no difficulty, for undoubtedly the practice has prevailed in all parts of the state for the alienee to petition and elect in the same manner as the child or children whom he represents.  It has been understood, and on that supposition the profession has acted, that the grantee or alienee succeeds as well to the right of choice as to the share of the estate.  It would be mischievous now to undertake to alter an established practice which has been productive of neither inconvenience nor injustice, and which would have the effect of unsettling the titles to many estates.  The practice moreover has the authority of the common law to support it.  Thus lord *Coke,* in his *Commentary* on the 245th section of *Lyttleton,* says : " and here a diversity is to be observed between the case of a partition in deed by the act of the parties, for then the privilege of election of the eldest daughter shall not descend to her issue, and when the law doth give the eldest any privilege, without her act, then that privilege shall descend.  As if there be divers coparceners of an advowson, and they cannot agree to present, the law still gives the first presentment *to the eldest ; and this* privilege shall descend to her issue ; *nay her assignee shall have it,* and so shall her husband that is tenant by the curtesy."  *Co. Litt.* 166, *b.,* *n.* 2.  Harris & Hales *v.* Nichols, *Cro. El.* 18 ; *Hob.* 107, where the doctrine is cited with approbation.  That the right of choice is not personal is also shown by the case of Hershe *v.* Brenneman, for if personal it could not descend to the issue.  It must also be remarked that it has been the practice, as in England, for the husband to petition, in right of his wife, for a partition of her land, and that this practice has received the sanction of the court in Stoolfoos *v.* Jenkins, 8 *Serg. & Rawle* 167.

Proceedings set aside.