# McKee *versus* McKee.

14    231
20 SC ¹ 41

1. In the case of an application to the Orphans' Court, *to decree specific performance* of a parol contract for the purchase of land, by the fifteenth section of the act of 24th February, 1834, relating to executors and administrators, notice must be given to the heirs of the decedent to appear in court on a day certain, and answer such bill or petition; and if it appear from the record that such notice was *not* given, the proceedings are *void*.

2. The only final decree to be made by *the Orphans' Court*, under the said act, in the case of a parol contract, is for *specific performance*. A decree adjudging the proof sufficient, and that it be endorsed upon the petition and certified, is not such a decree.

ERROR to the Common Pleas of *Erie county*, by John McKee et al., who were defendants below.

In this case, Mary Ann McKee and Harriet McKee, by their guardians, brought ejectment against John McKee and Matilda McKee, for two-sixteenths of one hundred acres of land. Both parties claimed through John McKee, who died intestate in 1814, seized of the land in question, leaving four children, Polly, John, Alexander, and Thomas, and a widow.

[McKee *v.* McKee.]

*Alexander* died in 1843, and the *plaintiffs* are two of his children, and claim as his heirs: defendants being the son of *John* McKee, deceased, and the widow of *Thomas*, who died since the decease of Alexander, and defend upon title in Thomas, alleging that Alexander in his lifetime, by parol sale, conveyed all his undivided interest in the land to Thomas, received part of the purchase money, and put Thomas in possession, who had subsequently made valuable improvements on the land.

On trial of the case, defendants offered in evidence a record of the Orphans' Court of Erie county, viz., the petition of Thomas McKee for leave to prove said parol sale, and the proceedings and adjudication thereon, which was objected to by plaintiffs and rejected by the court below, and exception sealed at the request of the defendants' counsel, which rejection is one of the errors alleged in this case.

The petition of Thomas McKee was addressed to the judges of the *Orphans' Court*, and, after referring to the fact of the parol sale and payment of part of the purchase money, stated that petitioner was ready and willing to pay for the said land, or share according to the terms of the contract, all which he was ready to prove. He prayed the court to receive proof of the said contract, in order to the completing of the title, &c. Petition presented in November, 1843.

At November sessions, 1843, the court appointed *the widow* of the said Alexander, *guardian ad litem* of the minor children of the said Alexander, and appointed G. J. Ball, Esq., commissioner to take the depositions of witnesses respecting the within alleged contract, and directed at least ten days' notice to be given *to said widow of Alexander and to the children*, heirs and widow of the said John McKee, deceased, of the within *application*, and of the taking of said depositions.

A notice was signed by the attorneys of Thomas McKee, addressed to Mrs. Eliza McKee, widow, and guardian of the minor children of Alexander McKee, deceased: it referred to the petition of Thomas to the Orphans' Court, and to the main facts stated in the petition, and concluding as follows: "And thereupon the said court appointed the widow of the said Alexander guardian *ad litem* of the minor children of the said Alexander, and appointed G. J. Ball, Esq., commissioner to take the deposition of witnesses respecting the within alleged contract. Now therefore you are hereby notified, that in pursuance of the above-mentioned order of court, the depositions of witnesses will be taken before the said G. J. Ball, Esq., at his office in Erie, on the 19th day of December inst., commencing at ten o'clock, A. M., of said day."

Thomas McKee, being duly sworn according to law, deposeth that on the 9th day of December, 1844, he served a copy of the

[McKee *v.* McKee.]

annexed notice of taking depositions on *Mrs. Elizabeth McKee, widow of Alexander McKee*, late of Mill Creek township, deceased.

Notice of the taking of depositions, with a reference to the proceedings in the Orphans' Court, was also given to other of the heirs of John McKee, Sen., deceased.

A deposition of John McKee, the claimant of another portion of the land, part of which was in dispute, was taken.

The court adjudicated as follows:

*20th December*, 1844.—The court adjudge the proof sufficient, and direct the same to be endorsed upon this petition and to be certified, &c.

By the court, · WILSON KING, Clerk.

The papers were recorded in the Recorder's office, Erie county, in deed-book P, pages 615, &c., the 22d day of May, A. D. 1845.

On the trial, the plaintiffs showed title to two-fifths of one-fourth of the land claimed and described in the writ.

The defendants offered the papers purporting to be proceedings, in proof of the parol contract above referred to, including the decree of the court thereon, &c.

The evidence was objected to on the part of plaintiffs, on account of insufficiency.

CHURCH, J.—The jurisdiction of the Orphans' Court to make a decree for the specific execution of such contract. does not attach, except the parties to be affected (especially if they be minors) have had a day in court appointed by preliminary order. These proceedings negative this altogether. The court never appointed such day, and it appears affirmatively that notice was not given, except of the taking the testimony before the commissioners, which of itself was very harmless as respects the interest of the heirs. Besides this, the proceedings contain no decree for a specific performance of the alleged contract, nor is any offered to be shown; without which, the evidence will be ineffectual and irrelevant.

The evidence was rejected, and exception on part of defendants.

The defendants then again offered the same proceedings, and to follow it with the petition of John McKee, one of the defendants in this suit, and the administrators of Alexander McKee, deceased, to the Orphans' Court for leave to make a deed in pursuance of the alleged proof of contract, and the order of said court thereupon to make such deed, and the deed itself made in pursuance thereof, dated 25th March, 1846; and with proof that Thomas McKee paid the balance of the purchase money then remaining to said administrator, and the same was charged to him in his account, since confirmed in the Orphans' Court, and that distribution thereof has been made among the heirs of Alexander McKee, deceased.

[McKee *v.* McKee.]

To which evidence plaintiffs did then and there object, on account of want of jurisdiction in the court and want of the essential adjudication or decree of the court, and because the guardian of plaintiffs could not, by receiving the money upon totally defective proceeding, divest the interest of the wards in the real estate of their ancestor.

BY THE COURT.— These latter proceedings have no validity, unless the court had jurisdiction in the former. The court had no authority to order a deed made, unless proceedings were previously recorded. They could not be recorded until certified by the clerk of the court, and he could only certify when and after the court had decreed a specific performance of the contract; and this latter the court could not do to affect the interest of the heirs, unless they had a day in court. All these requisites are wanting. They give no additional validity to these proceedings by accumulation of decrees, for all are dependent upon the jurisdiction and first decree. These failing, all fail, and are not cured by the act of the guardians in receiving the proceeds of the purchase money. If they could thus cure the defect here, they could in any and all cases, which could not be tolerated. The evidence is therefore rejected.

Whereupon the defendants, by their counsel, excepted.

It was assigned for error, that the court below erred in rejecting the record offered in evidence by defendants, as in defendant's first and second bill of exceptions.

The case was argued by *Babbit*, for plaintiffs in error.—He contended that the Orphans' Court had jurisdiction of the subject, and the decree was intended and understood to be a final decree, and a decree of specific performance, and was so treated by the court in directing the administrator to make a deed. That though there may be errors apparent on the face of the record, the proceedings and decree should not be treated *as void*. That the errors are not examinable in a collateral action. That notice of the application was given. That it does *not* appear *affirmatively* that there was no day appointed for the hearing and no notice given. Both may have been done and omitted to be noticed on the record; it may be presumed: 10 *Ser. & R.* 193; Kimball *v.* Saunders, 10 *id.* 207, 286; sect. 2 of act of 29th March, 1832, relative to Orphans' Courts, providing that the proceedings in the Orphans' Courts shall not be avoided collaterally. . That the record, though incomplete in wanting the final adjudication, was evidence as far as it went, and should have been received.

*Marshall* for defendants in error.—That the Orphans' Court had no jurisdiction of the parties in interest, who never had a day in court; the court never fixed *a day for hearing*, and the petitioner

[McKee *v.* McKee.]

did not give notice to the widow and heirs of that part of the order of the Orphans' Court which directed ten days' notice to be given of the *application.*

That the 52d section of the act of 29th March, 1832, provides the manner of giving notice, in all cases in which heirs are interested; and a further provision exists in the 53d section, where there are minors. The 15th section of the act of 24th February, 1834, requires, in case of a contract in writing to convey, notice of the bill or petition to the heirs, to appear on a *day certain* and answer—and the 16th section contains a similar provision as to a *parol contract.*

That the Orphans' Court never made a decree for the *specific performance of the contract,* as directed by the 17th section of the act of 24th February, 1834; they adjudged only the proof sufficient, and direct the same to be endorsed upon the petition, and to be certified, &c. That was not a proper decree to be made in the Orphans' Court, under the provisions of that act.

The opinion of the court was delivered, Oct. 9th, by

Bell, J.—The record offered by the defendants below, exhibits a succession of radical mistakes from beginning to end. It is a little singular, that in spite of the unambiguous provisions of our statutes, relating to the contracts of decedents, court and counsel should have fallen into the error of confounding two distinct remedies, involving a confusion of jurisdiction, and a jumble of decrees, destructive of the whole proceeding.

The acts of 1792 and 1818 provide a method for taking proof *in the courts of Common Pleas,* of the unexecuted real contracts of decedents, previous to the institution of any suit for the breach of them, and enable the executor or administrator to make the necessary conveyance, under the order of the court. This remedy being found imperfect, in certain cases, the act of February, 1834, was passed, conferring on the several *orphans' courts* the power, elsewhere exercised by courts of chancery, of decreeing specific performance of these contracts. The difference between these several modes of procedure, and the results attained by each, is pointed out in Chess' Appeal, 4 *Barr* 52, and McFarson's appeal, 1 *Jones* 503, which show them to be strongly distinguished by features peculiar to each. Indeed, they possess no one leading characteristic in common. The jurisdiction exercised by the Common Pleas, is, in fact, a method devised to avoid common law suits for damages, was originated by statute, and is, perhaps, known only in Pennsylvania; while that conferred on the Orphans' Court, is, confessedly, borrowed from the long established practice of courts of equity. These important differences seem to have been overlooked by the defendants below. Apparently acting upon the notion, that the two jurisdictions are concurrent, they invoked the

[McKee *v.* McKee.]

Orphans' Court to exert a power possessed by the Common Pleas only. This initiatory error was the propagator of others, equally gross. The step first consequent upon the presentation of the petition, would naturally be, to fix a day for the answer of the defendants, and giving notice thereof, by citation or other order. This, however, was wholly omitted, and instead, the court directed a commission to examine witnesses, of which notice was to be given to a guardian *ad litem*, appointed on the instant. Immediately on the return of this commission, and but one day after taking the single *ex parte* deposition, upon which the decree was founded, the court adjudged the proof to be sufficient, and directed it to be certified. Nay, if we are to give credence to the formal certificate of the proper officer, this adjudication was pronounced by the court of Common Pleas, to which the procedure would seem to have been transferred, without notice to any whose interests were to be affected. Treating this, however, as a clerical error, and conceding that the record remained in the Orphans' Court, the proffered evidence is encountered by the fatal objection, that the whole proceeding is *coram non judice ;* a thing wholly void, for want of the requisite authority in the tribunal employed. As this fatal fact is apparent on the face of the record itself, there is nothing remaining, upon which to found the subsequent petition of John McKee's administrator, to the Orphans' Court, for leave to make a deed, in pursuance of the alleged contract, the order of the court therein, and the deed made in pursuance of it. All these steps were of no avail to vest a title in the defendants below, for they are obnoxious, not only to the objection that the Orphans' Court was incompetent to give effect to the particular statute, under which they had place, but also, that the order, upon which they were based, was without efficacy.

But were it possible to regard the proceeding as originating in an application for a specific performance, under the act of 1834, it would still be found radically defective. In imitation of the known practice of courts of chancery, the 15th section of the act directs due notice of the bill or petition to be given " to the purchaser, or the executors or administrators and heirs of the decedent, or devisees of such estate, as the case may require, to appear in such court, on a day certain, and answer such bill or petition." The 52d and succeeding sections of the act of 29th March, 1832, prescribe the mode to obtain the appearance of persons amenable to the jurisdiction of the Orphans' Court, and to compel obedience to its orders and decrees. The process is by citation, returnable on a day certain, and to be duly served on the defendant, when he can be found within the proper county, or if not, then by other modes of notice pointed out. Where minors are interested, service is to be on the guardian, if there be one residing within forty miles. If not, the minor himself is to be notified, if above the age of four-

[McKee *v.* McKee.]

teen years, and if under that age, his next of kin.   If, at the next
session of the court thereafter, such minor shall not apply for the
appointment of a guardian, a guardian *ad litem* may be designated,
upon whom all notices shall be served.

The anxiety of the law makers to secure to defendants a day in
court, after due notice, so sedulously manifested, is but in accord-
ance with the principle, that before the rights of an individual can
be bound by a judicial sentence, he shall have notice of the pro-
ceeding against him.   This is announced to be an axiom of natural
justice and of universal application, by MARSHALL, C. J., in the
case of the Mary, 3 *Peters' Con. Rep.* 312. · Such notice is indis-
pensibly necessary to give jurisdiction over the person of the party.
Com. of Pilotage *v.* Low, *Charlton* 298; Jones *v.* Kenny, *Hardin*
96; and it has been truly said that, without citation and an oppor-
tunity of being heard, the judgment of a court, whether eccle-
siastical or civil, is absolutely void: Com *v.* Green, 4 *Whar.* 568.
This principle was recognized in Ege *v.* Sidle, 3 *Barr* 124, and in
Ragan's Estate, 7 *Watts* 440, 441, where Jackson *v.* Brown, 3 *Johns.
Rep.* 459, is approvingly cited.   The latter is an instance of its
application in a collateral proceeding, in avoidance of a judgment
rendered in partition.   Indeed, its observance is felt to be so
entirely essential to the preservation of individual right and the
advancement of social obligation, that no official endorsement is
required to enforce its general acceptance.   Yet, as the record
itself shows, in the case before us, this fundamental rule of right
seems to have been entirely overlooked.   No process was issued to
call in the defendants; no day given them to dispute the asser-
tions of the petitioner; and no hearing had upon the merits of his
case.   In fact, the whole proceeding was *ex parte,* for it cannot
be said the notice of taking depositions rescues it from this condi-
tion.   That notice was to one invested with no right to represent
the minor children.   But had this been otherwise, there could
regularly be no such notice before the parties were brought into
court by process; a preliminary step essential to the jurisdiction.
They never were so brought in, nor was there any attempt made
to bring them in.   They were, consequently, without the power
of the court, and are unbound by any decree pronounced against
them.   In truth, no final decree was pronounced by the Orphans'
Court.   Under the statute investing it with authority, the only
final decree contemplated is of specific performance.   The endorse-
ment directed to be made on the petition presented, is not such a
decree, nor any thing like it.   Indeed, it was not intended to be;
for it is obvious, that in directing this entry, those who conducted
the application, proceeded under the act regulating the Courts of
Common Pleas, and, as already observed, the remedy attempted
was that which can only be administered in the latter tribunal.
This mistake is radical and fatal.   The Orphans' Court attempted

[McKee *v.* McKee.]

to do something it had no authority to do. The attempt was, therefore, productive of no results. It could neither confer a right, nor redress a wrong. The power to divest men of their estates and transfer them to others, is a momentous one; to be exercised with great care and caution. Before it can be made effective, the court must possess itself, not only of the subject, but of the person whose interests are to be dealt with; and after this, the proper decree must be pronounced. In these essentials, the action of the Orphans' Court was altogether wanting. The court below was consequently right in rejecting the evidence, as of no importance in assisting a determination of the controversy.

Judgment affirmed.

GIBSON, C. J.—I concur in this case, only because I think there was no order or judgment at all.