## Thompson and Wife *versus* Stitt *et al.*

1. An alienee of an heir is a proper party to proceedings in partition and succeeds to the right of election.

2. A husband may accept as agent of his wife and, by his acceptance, acquires title in his own right to the extent of his advance for owelty beyond his wife's interest.

3. An heir's interest was sold at sheriff's sale, another heir being present; the latter afterwards commenced proceedings for the partition of the land. The purchaser was not named in the petition, nor in any way made a party to the proceedings, nor had notice of any of them: the land was adjudged to the petitioner. *Held*, that he took no title to the interest sold by the sheriff.

4. The Orphans' Court, by reason of the purchaser's want of notice, did not pass upon her title, and the adjudication was not conclusive upon her.

5. Merklein *v.* Trapnell, 10 Casey 42, remarked on.

November 2d 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

[Thompson *v.* Stitt.]

Error to the Court of Common Pleas of *Armstrong county:* No. 12, to October and November Term 1867.

The action in the court below was ejectment, brought by Edward Thompson and Nancy his wife, in her right, against Levi Stitt and John F. Stitt, for 62 acres of land. The writ was issued April 9th 1864.

The land in controversy belonged to John Stitt, Sr.; he died prior to 1833, and the land descended to his two sons the defendants, and a granddaughter named Amanda M. Stitt. On the 6th of May 1863, all the interest of John F. Stitt in the land was levied on, and sold in the same month by the sheriff to Nancy Thompson, one of the plaintiffs. On the 3d of June then next, the sheriff executed to her, and acknowledged, a deed for an undivided third of the land late of John Stitt; and for this the ejectment has been brought. After giving these facts in evidence, the plaintiffs rested.

The defendants, under objection and exception by the plaintiffs, proved the reading at the sheriff's sale by Mr. Fulton, Levi Stitt's attorney, of the following notice, which was attached to his writ:—

"All persons interested, are hereby notified that the property now selling as the property of John F. Stitt, does not belong to him; that he has no interest therein; but the same belongs to me, and I will enforce my rights, by all proper means. 30th May 1863.                                                     LEVI STITT."

They also gave in evidence under like objection and exception, from the records of the Orphans' Court, proceedings in the partition of the real estate of John Stitt, Sr. The petition for the partition was by Levi Stitt, and was presented December 16th 1863, setting forth the death and seisin of the decedent, that Levi had in October 1833 purchased the interest of his brother John F. Stitt in the land, and had paid him in full, &c. An inquest was awarded, which appraised the property, &c.: the inquisition was confirmed March 7th 1864, and on the 9th of June it was adjudged to Levi, who was directed to give a recognisance to Amanda the granddaughter for one-third of the valuation: the residue was awarded to Levi in his own right and that of his brother, John F. Notice of the proceedings was served on Levi, John F. and Amanda. Mrs. Thompson was not named in the petition, or any other of the proceedings, and she had no notice of them. Levi paid to Amanda the amount of the valuation awarded to her. The defendants also gave evidence of a parol contract of sale of his interest by John to Levi, but the court below (Buffington, P. J.) decided that the contract proved was insufficient to pass the interest.

[Thompson *v.* Stitt.]

The court also charged:—

" The next question in this case is *as* to the effect of the partition in the Orphans' Court.   Old John Stitt died seised, and the premises descended, as before stated, to Levi, John F. and Amanda M. Stitt.   In 1863 and 1864, on proceedings in partition, the property was decreed and adjudged to Levi Stitt, to hold in severalty for all the estate of which his father died seised. We think this decree was final and conclusive upon all the heirs, and all others deriving title under that descent, whether heirs or purchasers from him, or purchasers of the interest of heirs, either at private or sheriff's sales.   The Orphans' Court had jurisdiction, and the decree is final and cannot be impugned."

The jury found for the defendants, and the plaintiffs took a writ of error.

The errors assigned were, the admission of the evidence objected to, and the part of the charge of the court given above.

*E. S. Golden,* for plaintiffs in error, cited Ragan's Estate, 7 Watts 438; Acts of April 14th 1835, § 2, Purd. 293, pl. 128, Pamph. L. 275; March 29th 1832, § 40, 42, 52, 53, 54, Purd. p. 294, pl. 133, p. 297, pl. 149, p. 765, pl. 15, 16, p. 290, pl. 110, Pamph. L. 201, 203, 207, 208; Penobscot Railroad *v.* Weeks, 52 Maine Rep.; McKee *v.* McKee, 2 Harris 237; The Mary, 3 Pet. Cond. R. 335; Commissioners of Pilotage, Charlton 298; Jones *v.* Kenney, Hardin 96; Commonwealth *v.* Green, 4 Wh. 568; Ege *v.* Sidle, 3 Barr 124; Blackwell *v.* Cameron, 10 Wright 236; Hood on Executors, 299, 300, 475; Snyder *v.* Nargar, 1 Dall. 68; Bellas *v.* McCarty, 10 Watts 16; Naglee *v.* Albright, 4 Whart. 98; Stonebreaker *v.* Short, 8 Barr 155; Jacques *v.* Weeks, 7 Watts 269; York Bank's Appeal, 12 Casey 460; Jennings *v.* Blincorne, 2 Vernon 609; Lecheve *v.* Lecheve, 3 Atkins 648; Brotherton *v.* Hatt, 2 Vernon 573; Toulman *v.* Steer, 3 Meriv. 210; 2 Powell on Mortgages 554 and note; Hood *v.* Fahnestock, 8 Watts 491; Bracken *v.* Miller, 4 W. & S. 111; Smith's Appeal, 11 Wright 424; Speer *v.* Evans, Id. 141; Buehler *v.* Buffington, 7 Id. 292; Fox *v.* Lyon, 3 Casey 9; Dresher *v.* Water Co., 2 P. F. Smith 225; Painter *v.* Henderson, 7 Barr 48; Dixey *v.* Laning, 13 Wright 143.

*J. A. Fulton,* for defendants in error, cited McPherson *v.* Cunliff, 11 S. & R. 422; Dixey *v.* Laning, 13 Wright 143; Herr *v.* Herr, 5 Barr 428; Painter *v.* Henderson, 7 Id. 48; Merklein *v.* Trapnell, 10 Casey 42.

The opinion of the court was delivered, January 7th 1868, by

AGNEW, J.—It was decided in Ragan's Estate, 7 Watts 438, that an alienee having the title of an heir is a proper party to

[Thompson v. Stitt.]

proceedings in the Orphans' Court for partition, and succeeds to the right of election. This, though not founded on the letter of the statute, results from its true design, has been sanctioned by general practice, and is recognised in subsequent cases: Thomas v. Simpson, 3 Barr 71; Sampson's Appeal, 4 W. & S. 86; Painter v. Henderson, 7 Barr 50. In Uzziah Stewart's Estate, decided at this term (post, p. 241), the right of the alienee to participate is again asserted. The case of a husband is analogous.

Though not within the letter, he is not only allowed to accept as the agent of his wife, but is permitted to acquire a title by his acceptance in his own right, to the extent of the money he advances for owelty beyond the interest of his wife: Johnson v. Matson, 1 Penna. 371; Stoolfoos v. Jenkins, 8 S. & R. 175; Keen v. Ridgway, 16 S. & R. 60.

This brings us to the principal question in the case. Can Mrs. Thompson, as alienee of John F. Stitt in this collateral action, overturn the partition in the Orphans' Court, vesting the entire title and also John F. Stitt's proportion of the money in Levi Stitt?

Levi claimed John's share by an alleged purchase, appeared at the sheriff's sale of John's title at which Mrs. Thompson bought, and gave notice to the bidders that John's title belonged to him. Mrs. Thompson's deed for her purchase at this sale was duly acknowledged, and entered of record as sheriff's deeds usually are; Levi, therefore, had both actual and constructive notice of the legal alienation of John's title. This was in June 1863, and in the following December Levi came into the Orphans' Court and presented his petition for partition of his father's estate, setting forth that he was the purchaser or alienee of John's interest in the premises. Mrs. Thompson's purchase of John's estate was wholly unnoticed in the proceeding. She was neither named nor notified by any citation or rule taken in it. The land was appraised, and was finally awarded to Levi, to whom John's share of the valuation was also awarded. It is now contended that this decree of the Orphans' Court is conclusive against Mrs. Thompson, without being made a party, or having a day in court, or an opportunity of contesting the title set up by Levi to John's share. Giving to the decrees of the Orphans' Court all the sanctity they really have, both by statute and numerous decisions, it would not seem to apply to this case.

The 2d section of the Act of 14th April 1835, requires that in proceedings for the partition and valuation of an intestate's real estate, the *parties in interest* shall be named in the petition, decrees and notices when known, and provides for publication to reach those whose names and residences are unknown. Ample provision is made by the Act of 29th March 1832, relating to Orphans' Courts, for notice to all interested in any proceedings

[Thompson *v.* Stitt.]

therein (see §§ 52, 53, 57 and 40, 42). Mrs. Thompson being a resident in the county and known to the petitioner as alienee by sheriff's sale of John F. Stitt's purpart, was entitled to be named in and notified of the proceeding. Without notice or naming as a party, can she be bound by it ? The court it is true had general jurisdiction of the subject-matter ; but it never had any over her. Without being named or notified, it is against the principles of natural justice that her right should be adjudicated. If it be said she might appeal, it is answered that she was no party, and is not even supposed to have the knowledge which would lead to an appeal. The time for appeal has now arrived. In The Commonwealth *v.* Green, 4 Whart. 568, 601, it is said by Justice Rogers, and reiterated by C. J. Gibson, that the judgments of all courts are absolutely *void* when rendered without citations, trial or opportunity of hearing. So said Justice Bell in McKee *v.* McKee, 2 Harris 237, and it was held in that case, that in a proceeding in the Orphans' Court for specific execution of the contract of a decedent, the decree is void as to the heirs who were not notified, it appearing from the record that they were not. And in Ege *v.* Sidle, 3 Barr 115, it was held, that a proceeding before the Board of Property upon a caveat, where the decision is conclusive upon the parties, unless an ejectment be brought within six months, has no force against the heirs who have not been made parties to it. Blackwell *v.* Cameron, 10 Wright 236, is a stronger case. In an action of partition, a part owner was named in the writ, but omitted in the *narr.*, and the subsequent proceedings and partition were without notice to him, and it was there held he might contest the title set up under the partition, in an ejectment brought against him by the claimants under the partition.

The principle which governs this case, it seems to me, is that stated in Dresher *v.* Allentown Water Company, 2 P. F. Smith 229, that the Orphans' Court decrees are conclusive and cannot be impeached collaterally, but like all other judgments are conclusive only of the things adjudicated. So, here, the Orphans' Court never passed upon Mrs. Thompson's title as alienee to John F. Stitt's share ; for the plain reason that she was not named or known in the proceeding, or notified in any manner of its progress. After the sheriff's sale John F. Stitt had no further interest in the property, and could take nothing under the partition. Mrs. Thompson, his alienee by due course of law, was the real party who ought to have been named and notified, and this fact being known to Levi Stitt, the petitioner, it does not lie in his mouth to gainsay her title through means of a proceeding, which gave no notice to her, and in which she was not called on to show cause why John F. Stitt's purpart should not be allotted to Levi. Merklein *v.* Trapnell, 10 Casey 42, is relied upon as an

[Thompson *v.* Stitt.]

authority against the alienee. But there the alienees, Fousts, never recorded their deed, abandoned the purchase, paid no purchase-money, and never afterwards returned to or claimed the land; and the proceedings in partition remained uncontested for thirty years.

The decree there was held to be conclusive, but the circumstances were totally unlike the present.

The case is therefore not to be viewed as an authority here.

Judgment reversed, and a *venire de novo* awarded.