# Vensel's Appeal.

77   71
193  419
77          71
20 SC   41

1. The better practice is to give notice to the widow and heirs, of awarding partition in the Orphans' Court, but such notice is not necessary, if it appear by the return of the writ and inquisition that the parties had notice.

2. At the return of the inquisition objections may be made both to the right to make partition and to the partition itself.

3. The rules to accept or refuse or show cause against a sale need not be served by the sheriff; they may be served by the party or any other person.

4. A petition for partition and the writ named the widow as a party, the return of the inquisition recited that the parties were warned to appear; the inquisition set forth that the premises could not be divided, and valued them; this was approved by the court; the premises were sold by order of the court and the sale confirmed. *Held,* that this was a final decree and conclusive of the facts which led to the decree.

5. The sale was a legal conversion, bound the widow and divested her interest.

6. The order of sale recited the rules to accept or refuse and to show cause against a sale, and that due proof was made of their service. *Held,* that this was the act of the court and evidence of notice.

7. The presumption is that in the rule to show cause against the sale the widow's name appeared; she had a direct interest in the sale; the recital of service on the "heirs and legal representatives," is conclusive of service on her.

8. The purchaser of land sold after an Orphans' Court partition, having died, the petition for the sale of the same land for the payment of his debts, recited that it was subject to the "dower" of the widow of the first decedent; the same was also in the conditions of the last sale. *Held,* that this did not change the nature of the widow's estate; it was as fixed by law on acceptance at the valuation or sale after partition.

9. The husband having died intestate and seised, her estate was not "dower;" the proceeding in the Orphans' Court converted it into a money charge on the premises, with the remedy for collection given by law.

10. Horam's Estate, 9 P. F. Smith 152; Richards *v.* Rote, 18 Id. 253, adopted.

[Vensel's Appeal.]

October 22th 1874.   Before AGNEW, C. J., SHARSWOOD and MERCUR, JJ.

Appeal from the Court of Common Pleas of *Clarion county:* In Equity.   Of October and November Term 1873, No. 132.

The proceedings in this case were commenced February 12th 1872, by bill filed by Barney Vensel, assignee of Susan Vensel, widow of Jacob Vensel, deceased, against Lewis Colner.

Under various proceedings in the Orphans' Court, the defendant had become the owner of real estate of which Jacob Vensel had died seised : his widow assigned to the plaintiff all her rights as widow in the rents and profits of the land ; this bill was brought against the defendant for an account.

The facts in the case, shown by the report of David Lawson, Esquire, master, were as follows :

Jacob Vensel died on the 19th day of September 1845, intestate, seised of a farm containing about 100 acres, the same real estate referred to above ; he left a widow, Susan Vensel above-named, and nine children (John Vensel and Jane Fink being two of them), and the children of a son deceased : six of the children conveyed their interests in the real estate to John Vensel.

On the 7th of September 1852, he presented a petition to the Orphans' Court, setting out the foregoing facts, the widow being named in the petition, and praying the court to award an inquest to make partition of the above-mentioned tract of land to and amongst the children and representatives of the intestate, or to value and appraise the same, &c.   The inquest was awarded on the same day.   The writ recited the petition, the widow being named in the writ.   The inquest returned that having gone to the premises " *and the parties in said writ named, being served, warned and as many as chose being present,*" the jurors found that the premises could not be divided, and therefore they valued them at $1000.   The widow had notice of these proceedings. The record shows the following entry as to this inquisition : "December 22d 1852, approved, and rule on the heirs to appear at the next term and accept, or show cause why the same should not be sold."   This rule was directed by name, to all " the lineal decedents of Jacob Vensel, deceased, and to all other persons interested."   It cited them to appear at the Orphans' Court, the first Monday in February 1853, " to accept or refuse to take the real estate of Jacob Vensel, deceased, situate, &c., at the appraised value put upon it by an inquest, &c., returned, &c., on the first Monday of December last past, to wit : the entire premises at the sum of $1000."   The sheriff returned, without affidavit of service, that he had served the rule on all the children, and the guardian of those who were minors, " personally and by copy."   The rule was not served on the widow ; the rule itself was not filed, but a copy of it and the return appeared on the record.

[Vensel's Appeal.]

On the 8th of February 1853, the court appointed D. B. Hamm, sheriff, trustee to sell the property.

The record does not show any other action with reference to the rule upon heirs, except as is found in the recitals of subsequent proceedings.

An order of sale was issued to Hamm on the 23d of February 1853.

It recited the return of the inquest; that the court "having confirmed the same and none of the representatives having appeared to take" the real estate at the valuation, "the court granted a rule on all the heirs and legal representatives of the said Jacob Vensel, deceased, requiring them to appear at the then next Orphans Court, &c., to accept and refuse the same at the valuation, and to show cause, if any they have, why the said real estate should not be sold. At which time due proof being made of the service of said rule according to the Act of Assembly, as appears by the return of the sheriff, and none of the heirs appearing to take the said (land), &c., at said valuation, it was considered by the court that they had relinquished their respective rights to take the same, and therefore at the instance of Jane Fink, one of the heirs," &c., the court ordered Hamm to sell.

The sheriff returned to the order of sale: "April 30th 1853, cried the within property and sold the same to John Vensel for $700.

The sale was confirmed May 7th 1853, and on the same day a deed was executed and delivered by the trustee to John Vensel the purchaser. It recited at large the petition for an inquest; the return of the inquest appraising the land at $1000, the confirmation of the inquisition; the rule upon the heirs and its service; also that none of the heirs appearing to accept or refuse, "it was considered by the court that they had relinquished their respective rights to take the same;" it recited also the order of sale to the trustee. No reference was made in the deed to any interest of the widow, nor did the record show that her interest was in any way secured, or that she had notice of the proceedings after the inquisition.

John Vensel having died seised of the 100 acres of land conveyed to him as above stated, his administrators, Barney Vensel and Nelson Vensel, on the 5th of December 1860, petitioned the Orphans' Court for an order of sale of his real estate, including the 100 acres above-mentioned, for the payment of debts. The petition set out that in this tract, "Susan Vensel, widow of Jacob Vensel, deceased, has a dower of one-third." On the 8th of December an order of sale was awarded.

The order recited as in the petition, that the widow of Vensel "has a dower of one-third;" and the order was to expose the real estate, "as set forth in said petition," to sale. The conditions of sale stated that in this tract "Susan Vensel, widow of Jacob Ven-

sel, deceased, has a dower of one-third :" this was also in the advertisement and handbills giving notice of the sale.

The administrators returned, that they had sold this tract to Lewis Colner for $1205, and on the 4th of February 1861, the court confirmed the sale and ordered a deed to be made to the purchaser.

The administrators' deed to Colner made no reference to any interest of the widow of Jacob Vensel.

The widow continued to reside on the property, farming it, and taking the products until the death of John Vensel.

Previously to the sale to Colner he was informed that the property was to be sold subject to the widow's dower, and after the sale he frequently said that " he had to give the widow the one-third of all that was raised on the farm." She continued to live on the farm until the spring of 1871, when she left it. During this time the place was farmed by Colner, and she received one-third part of all the grain and hay raised on the farm, also a third part of the fruit ; after she left it Colner gave her one-third of the crops until the fall of 1871.

From the early part of 1871 until October 1872, Colner made a number of leases of oil wells on which he received a royalty ; he made coal leases also, from which he received a royalty, and there were perhaps additional sums of profit from the land other than those usually derived from farm land.

The claim of the plaintiff was for one-third of the rents and profits of all kinds, including the receipts from the oil and coal leases, during the life of the widow of Jacob Vensel.

The defendant's defence, amongst other things was, that under the proceedings in partition, &c., in the Orphans' Court, the widow's dower was fixed by law, and that she was concluded by the inquisition and appraisement and approval of the proceedings by the court and these proceedings could not be inquired into collaterally.

The master reported as his opinion, that the widow was entitled to notice of the rule on heirs in order to divest her interest under the intestate laws, and that although not entitled to take the land at the appraisement, she was a party in interest and should have been named in the petition, decree and notices. He therefore held that the Orphans' Court had no jurisdiction over her interest and the proceedings in partition did not affect that interest. He stated an account finding that there was due from the defendant to the plaintiff the sum of $9000.69.

The defendant filed exceptions to the master's report.

After argument the court, Jenks, P. J. ; overruled the master's finding and dismissed the bill.

The plaintiff appealed to the Supreme Court and assigned for error, the decree dismissing the bill.

[Vensel's Appeal.]

*G. Shiras, Jr.* and *W. L. Corbit* (with whom was *J. B. Knox*), for appellant.—The widow was a party to the proceedings and her interest in her husband's lands would be affected ; she was therefore entitled to notice : Anderson's Appeal, 12 Casey 476 ; Kreiser's Appeal, 19 P. F. Smith 195. She was entitled to notice of the rule on heirs : Acts of March 29th 1832, sects. 42, 43 ; Pamph. L. 203, 1 Br. Purd. 440, 441, pl. 170, 175 ; April 14th 1835, sect. 2, Pamph. L. 275, 1 Br. Purd. 435, pl. 147 ; Ragan's Estate, 7 Watts 438 ; Thompson *v.* Stitt, 6 P. F. Smith 156 ; Richards *v.* Rote, 18 Id. 248 ; Blackwell *v.* Cameron, 10 Wright 236.

*G. A. Jenks* and *J. Campbell*, for appellee.—The widow had notice of the inquisition, the return of the sheriff showing that all the parties were warned and therefore the Orphans' Court had jurisdiction : Richards *v.* Rote, 18 P. F. Smith 248 ; Horam's Estate, 9 Id. 152 ; Dewart *v.* Purdy, 5 Casey 116 ; Act of March 29th 1832, sect. 41, Pamph. L. 202, 1 Br. Purd. 437, pl. 158. The proceedings were conclusive : McPherson *v.* Cunliff, 11 S. & R. 422 ; Ihmsen *v.* Ormsby, 8 Casey 200. A decree in partition in the Orphans' Court cannot be inquired into collaterally : Zeigler's Appeal, 11 Casey 176 ; Lair *v.* Hunsicker, 4 Id. 115 ; Merklein *v.* Trapnell, 10 Id. 42 ; Herr *v.* Herr, 5 Barr 428 ; Painter *v.* Henderson, 7 Id. 48 ; Lockhart *v.* John, Id. 137 ; Groff *v.* Groff, 14 S. & R. 184. The widow had no interest in her husband's land, but that cast on her by the intestate laws, and that is but an annuity in the nature of a rent charge : Power *v.* Power, 7 Watts 205 ; Shaupe *v.* Shaupe, 12 S. & R. 9 ; Thomas *v.* Simpson, 3 Barr 60 ; Gourley *v.* Kinley, 16 P. F. Smith 270. She was not interested in the rule to accept or refuse ; Painter *v.* Henderson, *supra ;* Scott on Intestate Laws 404. Securing her interest by the deed and recognisance is not indispensable, her interest being a fixed statutory lien, and securities taken for it are only cumulative : Hire *v.* Geiger, 7 W. & S. 273 ; Medlar *v.* Aulenback, 2 Penna. R. 355 ; Kline *v.* Borman, 7 Harris 24. The conditions of sale as to the land being subject to the widow's dower were of no effect ; the trustees could impose no conditions except those prescribed by the law or the court : Randolph's Appeal, 5 Barr 242 ; Backenstoss *v.* Stahler, 9 Casey 251 ; Harbold *v.* Kuster, 8 Wright 292.

Chief Justice AGNEW delivered the opinion of the court, November 2d 1874.

This case in nearly all its features is governed by the decision in Horam's Estate, 9 P. F. Smith 152. There, though the practice would be better to give notice to the widow and heirs of the awarding of the partition, it is held to be unnecessary, it being sufficient, if it appear at the return of the writ and inquisition taken, that the

[Vensel's Appeal.]

parties had notice, at which time it is competent to make objections to the right of partition as well as to the partition itself. In regard to the subsequent rules to accept or refuse, and show cause against a sale, the law does not require service to be made by the sheriff. It may be made by the party or other person. The conclusiveness of the decrees of the Orphans' Court upon matters within its jurisdiction have been so often asserted and repeated it is unnecessary to cite authority for this well known principle. The distinction upon which the application of this principle depends has been well stated in Richards *v.* Rote, 18 P. F. Smith 253, by our brother Sharswood, that when the name of a party in interest does not appear in the petition, decree and notices, unless it appears by affidavit that his name is unknown, and publication made accordingly (under the Act of 1835) his share or estate will remain undivided, or undivested if there is a sale ordered, unless by some subsequent act or conduct of such party, or those claiming under him, it has been ratified. But when his name does appear, it will be *conclusively* presumed in favor of the regularity of the proceedings of a court of justice, that due and regular notice has been given, even though it is not affirmatively shown in the record.

Now in this case the widow was made a party to the petition, and to the writ of partition itself; and in the sheriff's return of the inquisition taken he recites that the parties in the writ were served and warned to appear. This inquisition setting forth that the premises could not be divided, and returning a valuation thereof, was approved by the court. The confirmation after partition or sale has all the effect of a final decree, and is conclusive of the facts set forth in the proceedings which led to the decree. This is sufficient to bind the widow, for the sale was a legal conversion and divested her interest. The order of sale recites the rule on all the heirs and legal representatives to accept or refuse the premises at the valuation, and the rule to show cause why the real estate should not be sold, and that due proof was made of the service of the rule according to the Act of Assembly. This is the act of the court by way of recital in the order and is evidence of notice. It is true there is found in the record only the copy of the rule on the heirs to *accept or refuse*, the rule to show cause against the sale not being returned with the record. But this occurred twenty years and more ago, and the presumption from the recital in the order of sale is, that both rules were issued and served, the clerk having issued them separately. This is a matter of mere practice, and may have arisen from the fact, that as the widow cannot accept premises not divided, but valued and appraised, the necessity for naming her in the rule to accept or refuse, was supposed to be unnecessary. When the premises are accepted they are taken at the valuation fixed by the jury, or now at an advanced bid by one or more of the heirs. But the presumption is that in

[Vensel's Appeal.]

the rule to show cause against the sale her name did appear, for in the sale the widow has a direct interest, and the recital of service on the heirs and legal representatives is conclusive of the service on the widow, as a legal representative, this being real estate, and the term, legal representatives, having therefore no application to the personal representatives.

But be the fact as it may the presumption of notice to the widow from the recital in the order of sale must be taken to be true. After twenty years it would be a harsh rule that would deprive an innocent purchaser of his estate because the papers are not all on file in the Orphans' Court. It is proper to add also that the deed to the purchaser recites the proceedings as regular, and as showing the widow a party and notice to all parties.

The recital in the petition of the administrators of John Vensel, deceased, the purchaser at the Orphans' Court sale, to sell for the payment of his debts, that the property was subject to the dower of Susan Vensel, the widow of Jacob Vensel, deceased, does not change the nature of her estate, which is fixed by the law on an acceptance by the heir, or a sale to a purchaser. The calling of it "dower" is but an ignorant use of a word common in all the country to designate the widow's estate in the real estate of her husband.

But her husband having died intestate and seised, her estate never was dower, and the incorrect use of the term in a subsequent proceeding cannot possibly change the effect of the proceeding in the Orphans' Court which converted her estate into a money charge upon the premises sold, with the remedy for collection given in the law. In no possible view of this case can the proceedings in the Orphans' Court be overturned. Ths assignee of the widow occupies no higher place than she did, and must recover according to the nature of her estate only.

Decree of the Orphans' Court affirmed, with costs to bo paid by the appellant, and the appeal dismissed.