## Perrine *v.* Kohr, Appellant.

*Partition—Omission of party—Undivested interest—Sale.*

When in partition proceedings the name of a party in interest does not appear in the petition, decree and notices, unless it appears by affidavit that his name was unknown and publication made accordingly, his share of the estate will remain undivided or undivested, if there is a sale ordered, unless by some subsequent act or conduct of such party or those claiming under him, it has been ratified.

Where a man deserts his wife and child, and goes to another part of the country, where he marries again under an assumed name, while his first wife is living, and has children by his second wife, and many years after he dies, leaving real estate, and such real estate is sold in partition proceedings instituted by the illegitimate children, and it appears that the legitimate child had no notice of the proceedings, and that her name did not appear in the petition, decree and notices, her estate is undivested by the judicial sale.    Ratification of the sale cannot be inferred from the fact that about the time of her father's death, the daughter asked a witness certain questions about her father, when the questions did not indicate that she knew the name under which her father had been living, or that she knew that her father was dead, or that he had any property in which she had an interest.

Where real estate of a decedent has been sold in partition proceedings in the orphans' court in proceedings instituted by the decedent's illegitimate children on the assumption that they were his heirs, the purchasers at the sale cannot, in an action of ejectment against them by the decedent's legitimate child, who had not been made a party to the partition proceedings, be heard to allege that a part of the proceeds of the land had been applied to the payment of decedent's debts, and that the plaintiff could not recover the land in dispute without offering to refund the portion of the purchase money applied to the payment of decedent's debts.

*Marriage—Evidence—Admissions by parties.*

The joint admissions by the parties of their marriage is in the nature of direct proof and is competent evidence of the fact of marriage.

In an action of ejectment where the plaintiff in order to prove the marriage of her father, produces a witness who testifies that she was present at a marriage ceremony solemnized by her brother-in-law, clergyman, that the name of one of the contracting parties was that of plaintiff's father, that no marriage certificate had been given because of lack of blanks at the time and because of the death of the clergyman shortly thereafter, the court commits no error in telling the jury that they were not to understand that the evidence of this one witness established the fact of marriage, but that it was in the nature of direct evidence, and tended to prove a ceremonial marriage.

Argued Feb. 13, 1902. Appeal, No. 2, Feb. T., 1902, by defendants, from judgment of C. P. Lycoming Co., March T., 1900, No. 25, on verdict for plaintiff in case of Louisa L. Perrine v. Matilda Kohr et al. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Ejectment for land in the city of Williamsport. Before JOHN STEWART, P. J., specially presiding.

The facts are fully stated in the opinion of the Superior Court.

Plaintiff presented these points :

1. That the admission of Stephen Pangborn of the fact of his marriage to Sarah Giles, and the admission of Sarah Giles of her marriage to Stephen Pangborn, are in the nature of direct proof of the marriage. *Answer :* I affirm that proposition ; it correctly states the law.

2. That the testimony of Sarah Wyckoff is evidence of a ceremonial marriage. *Answer :* I affirm this ; but you will understand that the evidence of this one witness establishes the fact of marriage ; it is in the nature of direct evidence, and tends to prove a ceremonial marriage. [12]

5. That if the jury find that Louisa Perrine, the plaintiff, was the legitimate child of Stephen Pangborn, and that Stephen Pangborn and W. S. Allen were the same person, then the orphan's court of Lycoming county had no jurisdiction to award the writ of partition in this case. *Answer :* Affirmed. [1]

6. In proceedings in partition in the orphans' court in order

to divest the interest of any person, it is necessary that such person should be named in the petition, decree and notices; and the 2d section of the act of April 14, 1835, makes this necessary to invest the court with jurisdiction over the person or his estate in the land. *Answer :* Affirmed. [2]

7. If the jury find that Louisa L. Perrine, the plaintiff in this case, is the legitimate daughter of Stephen Pangborn and Sarah, his wife, and that Stephen Pangborn and W. S. Allen were one and the same person, the title to the real estate described in the writ in this case devolved upon her on the death of her father, Stephen Pangborn, known in this community as W. S. Allen, and the verdict must be for the plaintiff for the land described in the writ. *Answer :* Affirmed. [3]

Defendants presented these points :

8. The orphans' court is by the act of assembly declared to be a court of record, with all the qualities and incidents of a court of record at common law ; its proceedings and decrees, in all matters within its jurisdiction, shall not be reversed or avoided collaterally in any other court. *Answer :* You observe in this point, gentlemen, it is stated that proceedings and decrees of the orphans' court are not to be reversed or avoided collaterally in any other court, in all matters within its jurisdiction. I affirm that proposition. It is not inconsistent with my rulings in respect to the points submitted by the counsel for the plaintiff. It remains true that if this plaintiff was the only legitimate heir of W. S. Allen, the orphans' court was without jurisdiction in the partition proceedings on his real estate begun on the petition of one who had no interest therein. [3]

9. A decree of sale by the orphans' court is an implied adjudication of the legitimacy of those who have been named in the proceedings as children of the decedent, which the heirs at law are estopped from denying. *Answer :* This point is refused. [4]

Verdict and judgment for plaintiff.     Defendants appealed.

*Errors assigned* were above instructions, quoting them.

*C. La Rue Munson* and *John G. Reading*, with them *James B. Krause, William W. Hart* and *John T. Fredericks*, for appellants.—The orphans' court is a court of record with all the

qualities and incidents of a court of record at common law; its proceedings and decrees in all matters within its jurisdiction should not be reversed or avoided collaterally in any other court: McPherson v. Cunliff, 11 S. & R. 422; Herr v. Herr, 5 Pa. 428; Painter v. Henderson, 7 Pa. 48; Lockhart v. John, 7 Pa. 137; Lair v. Hunsicker, 28 Pa. 115; Ihmsen v. Ormsby, 32 Pa. 198; Merklein v. Trapnell, 34 Pa. 42; Kreimendahl v. Neuhauser, 13 Pa. Superior Ct. 606.

Neither cohabitation, nor reputation of marriage, nor both, is marriage; when conjoined they are evidence from which a presumption of marriage arises: Yardley's Estate, 75 Pa. 207; Physick's Estate, 2 Brewster, 179; Wallace's Case, 4 Dick. 534.

*Seth T. McCormick*, with him *Henry C. McCormick*, for appellee.—Marriage may be proved by the witnesses to its solemnization . . . . and by declarations and admissions of the parties to it, when against their interest.

The effect of a decree in partition in the orphans' court is to divide what descends to the heirs, not to transfer the title from the decedent to his heir; partition operates only upon the parties to it: Dresher v. Allentown Water Co., 52 Pa. 225.

A partition in the orphans' court leaves the title as it found it. It does not decide title or create new title: Harlan v. Langham, 69 Pa. 235; Davis v. Dickson, 92 Pa. 365; Goundie v. Northampton Water Co., 7 Pa. 233; Ross v. Pleasants, 19 Pa. 157; McClure v. McClure, 14 Pa. 134; Allen v. Gault, 27 Pa. 473.

A decree of an orphans' court is a nullity if pronounced upon a subject over which the court has no jurisdiction: Smith v. Wildman, 178 Pa. 245; Smith v. Wildman, 194 Pa. 294; Wallace's Case. 4 Dick. (N. J.) 530; Greenawalt v. McEnelley, 85 Pa. 352; Smith v. Smith, 52 N. J. Law, 207; Clark v. Clark, 52 N. J. Eq. 650.

OPINION BY WILLIAM W. PORTER, J., April 21, 1902:

This is an action of ejectment in which a verdict has been found for the plaintiff. The facts upon which the verdict has been rendered are unusual. Their statement will serve to shorten the discussion of the questions of law involved.

Stephen Pangborn was married to Sarah Giles in January, 1863, at Plainfield, N. J. On December 31, 1863, a daughter was born, who was called Louisa. She is the Louisa L. Perrine, the present plaintiff. Pangborn deserted his family shortly after the birth of the child. He went to Williamsport, Pa., and was there known as W. S. Allen. He died intestate, the owner of the land in dispute and other lands. After coming to Williamsport, Pangborn, or Allen, as he was there known, was married, on November 11, 1865, to Sarah Harman, of Williamsport, his Plainfield wife being still alive. He had by Sarah Harman four children. Allen (as he will be hereinafter called for convenience) died by being accidentally shot while hunting in the autumn of 1888. Administration was raised on his estate. On April 24, 1890, a petition in partition in the orphans' court was presented by Edward Allen, a son by the second marriage. The petition recited that W. S. Allen died seized of the lands described, and set forth that he left a widow and four children, naming the family resident in Williamsport. On May 10, 1890, the administrator intervened in the proceedings, asking that the partition be stayed in order that the administrator might make sale of the realty to pay the decedent's debts, the personal property being insufficient. Procedure on this petition was by order of the court suspended, and on the same day the order for inquest in the partition proceedings was awarded. After the return of the rule to take or refuse at the appraisement, the orphans' court, on December 2, 1890, made an order of sale. The several pieces of property were exposed to sale, sold, the return of the sale made on November 29, 1890, and the sale confirmed December 6, 1890. The defendants in this ejectment procured title through purchase of one of the properties. On March 6, 1891, the court adjusted the costs in the partition proceedings, and on March 14, 1891, determined the amount of the widow's dower. On March 22, 1891, the administrator delivered to the several purchasers deeds for the lands sold, pursuant to the order of the orphans' court. Subsequently, the administrator filed his final account in the orphans' court, which was confirmed absolutely, April 3, 1891. An auditor was appointed to distribute the fund. A part thereof was directed to be paid to creditors of the estate. The balance for distribution was awarded to the four children of the dece-

dent living in Williamsport.   Of these proceedings the present plaintiff, Louisa L. Perrine, the daughter of the decedent and the sole heir, had notice neither by personal service nor by publication.   In December, 1899, the present action of ejectment was brought.

The jury has found from the evidence, as the case was submitted to them by the trial court, that W. S. Allen, whose real estate in Williamsport was thus sold, was in fact Stephen Pangborn, formerly of Plainfield, N. J., and that Louisa L. Perrine, the present plaintiff, is the legitimate offspring of the marriage in New Jersey.   It follows that the marriage in Williamsport was bigamous; that the Williamsport children are illegitimate, and that the sole legitimate heir is the present plaintiff.   The facts, therefore, upon which the plaintiff's case was founded have all been determined in her favor.   The duty of this court is to determine whether, as alleged by the appellants, error was committed in the trial of the cause.   There are numerous assignments of error, which raise, however, but five subjects of contention.

The appellants claim (1) that their title is protected by the record of the orphans' court in partition, showing purchase at a judicial sale, and that, the proceedings being regular on their face, they may not be attacked collaterally.   This legal proposition is earnestly pressed.   Its inapplicability to a case such as that before us has been determined by the Supreme Court in the case of Richards v. Rote, 68 Pa. 248.   Mr. Justice SHARSWOOD passed upon the effect to be given to a judicial sale in partition proceedings in the orphans' court, in an ejectment case, in these words: " We hold then that when the name of a party in interest does not appear in the petition, decree and notices, unless it appears by affidavit that his name was unknown and publication made accordingly, his share of the esstate will remain undivided or undivested, if there is a sale ordered, unless by some subsequent act or conduct of such party, or those claiming under him, it has been ratified."   This language is quoted with approval by Chief Justice AGNEW, in Vensel's Appeal, 77 Pa. 76.   See also Duke v. Hague, 107 Pa. 57, Young v. Young, 88 Pa. 422, Stewart v. Miller, 4 W. N. C. 552, McKee v. McKee, 14 Pa. 231, and Thompson v. Stitt, 56 Pa. 156.   It is unnecessary to elaborate the reasons

upon which the doctrine may be founded. Sufficient is disclosed in the cases cited. In the present case the plaintiff, the only legitimate child of the decedent, the sole owner of the real estate involved in the partition, is shown to have had no notice of the proceedings, and her name does not appear in the petition, decree and notices. Her estate, therefore, was undivested by the judicial sale, unless she by her acts and conduct ratified the sale.

This leads up to the next proposition presented by the appellants. It is argued (2) that the plaintiff's right to recover is barred because she delayed in asserting her title for eleven years " after knowledge of the facts." But what knowledge had the plaintiff and of what facts? A witness called in her behalf, who knew, and long concealed the knowledge, of the double life of Allen (or Pangborn) and who had returned from his funeral, said, on cross-examination, that he was interrogated by the plaintiff in regard to her father. He refused to give her information. He does say that she asked him whether his mother had received a telegram " from the man shot out west; " and wanted to know if her father was dead ; and whether the man shot was her father. The witness admits that she might have asked the question whether he had been at " her father's funeral at Williamsport." These questions to the witness (which he does not positively admit were put to him) are the only intimation of knowledge on the part of the plaintiff of the death of her father. Conceding that the questions were asked, they do not indicate that she knew the name under which her father was living in Williamsport; that she knew her father was dead ; or that she knew that he had left any property in which she had an interest. The questions were asked (if asked at all) two years before the proceedings in partition were taken. Of these proceedings, as has been seen, she had no knowledge. Her assertion of her title was made within a reasonable time after the discovery of the existence of her right. The testimony referred to is not positive proof of any knowledge on the part of the plaintiff, and if it be said that knowledge might be inferred, reply may be made that that which she knew, was not sufficient to warrant the court in saying, as matter of law, that the plaintiff had lost her right to her inheritance by laches. She could not have appealed from a decree of the orphans' court

of which it was not shown that she had any knowledge; nor be held to an obligation to bring an ejectment for lands while ignorant of her title to them.

The appellants assert (3) that a part of the money paid by the purchasers of the land at the orphans' court sale was applied by the administrator to the payment of the decedent's debts; and that the plaintiff cannot now recover the land in dispute without offering to refund the portion of the purchase money applied to the payment of the decedent's debts. The plaintiff's claim is based upon a title which gives her the land cleansed of any cloud from the partition proceedings to which she was not a party. The real estate was not sold by the administrator to pay the decedent's debts. The intervention by the administrator for this purpose was not permitted. The land was not sold as the decedent's land, but as that of his alleged heirs. The purchasers took only the title of the alleged heirs. This was, on the facts now ascertained, no title. In any aspect in which the sale may be viewed, it did not divest the plaintiff's title, nor can her interest in the land be diminished by now imposing upon it, as a charge, the payment of a portion of the debts of the decedent, already discharged out of moneys paid for a title which has proved worthless.

It must be conceded that the ruling as here made upon the effect of the record in the orphans' court, works a very apparent hardship upon innocent purchasers, who have paid money upon the faith of the record, and who beyond doubt would have been assured by counsel that the title purchased was good,—the facts subsequently proven being then unknown. On the other hand, to permit a sale by a decree of court made on partition proceedings brought by one having no interest and without notice to the real owner, to strip the latter of her property, would be no less a hardship. It may safely be asserted that there is no precedent in this commonwealth, for depriving a citizen of his property by judicial action without giving him his day in court.

The next assertion of error by the appellants is (4) that the court below erred in its ruling upon a point of charge. The court was requested to say: "That the admission of Stephen Pangborn of the fact of his marriage to Sarah Giles, and the admission of Sarah Giles of her marriage to Stephen Pangborn, are in the nature of direct proof of the marriage." This the

court affirmed. It is difficult to see how the learned trial judge could have otherwise answered this point. It would seem to have been based upon Greenawalt v. McEnelley, 85 Pa. 352, where it is said that, " The admissions by the parties of their marriage is in the nature of direct proof, and is certainly competent evidence of the fact." See also Commonwealth v. Haylow, 17 Pa. Superior Ct. 547, and cases cited. The rule is usually based upon the ground that admissions of marriage are against interest. In the case from which quotation is made the opinion demonstrates that the admission of the husband of his marriage was against interest, because it imposed upon him the burden of support and maintenance of the wife and her child. Here for the same reason the admission of the husband was clearly admissible. It has, however, been suggested that a declaration by a woman that she is married may not be against interest although no such distinction is made in the cases. According to the testimony, declarations by both parties were made in the presence of each other, of their intention to be immediately married. They left the house to be married, and on their return within the hour, in the presence of each other, both asserted that they had been married. The declaration of the wife, therefore, was not only uncontradicted, but corroborated, by the husband. It may be added that opposition to the marriage by the family of the wife was indicated by the testimony. It may be that a declaration of marriage made in the face of family opposition might be regarded as against interest in the absence of proof of any necessity for or of direct benefit to be derived from marriage, on the part of the woman. But the request for charge couples the admissions of husband and wife. They were joint and mutual declarations made at the time by the only parties to the contract, that a marriage had been solemnized. They were admissible because clearly in the nature of direct proof of the fact of marriage. No error was committed in affirming the point.

The appellants further contend (5) that error was committed in the answer of the court to this point of charge : " That the testimony of Sarah Wykoff was evidence of a ceremonial marriage." To this the court replied: "I affirm this. But you will not understand that the evidence of this one witness establishes the fact of marriage. It is in the nature of direct

evidence and tends to prove a ceremonial marriage." By accident the word "not" preceding the word "understand," was omitted in the assignment of error. It was clearly a mistake which, perhaps, led counsel to unduly emphasize the objection to the court's ruling. The answer, as set forth above, seems to be without objectionable feature. The testimony of the witness, Wykoff was in effect, that she was present at a marriage solemnized by her brother-in-law, a clergyman; that the name of one of the contracting parties was Pangborn; that the date was January 1 (which was the date of the alleged marriage of the plaintiff's father and mother); that no marriage certificate was given by reason of the fact that the celebrant of the marriage was without proper blanks at that time and that he died from an illness (with which he was suffering when he married the parties) within a week of the celebration of the marriage; and that a day or two after the marriage, application was made for a certificate, which the clergyman was at the time too ill to furnish. The learned judge was careful to say that the evidence of the witness did not establish the fact of marriage. He was right in saying that the testimony was in the nature of direct evidence and tended to prove a ceremonial marriage.

No reversible error is found in this record. It exhibits a case peculiar in its facts, presented on both sides with earnestness and skill by counsel, and well and carefully tried by the court below.

The judgment is affirmed.